**In re David Allen WIGGINS and Brenda Coffey Wiggins, Debtors.**

Bankruptcy No. 81–01652.

United States Bankruptcy Court, D. South Carolina.

June 24, 1982.

R. Michael Drose, Charleston Heights, S. C., for debtor.

Stan McGuffin, Legal Officer, Columbia, S. C., for creditor.

## ORDER

J. BRATTON DAVIS, Bankruptcy Judge.

This matter is before the court for confirmation of the debtors' amended plan. The South Carolina National Bank (the bank) has objected to the confirmation.

## FACTS

On November 5, 1981, the debtors filed their petition for relief under Chapter 13 of the Bankruptcy Code (11 U.S.C. § 1301 *et seq.*).

The bank filed a claim against the debtors for the indebtedness owed by the debtors to the bank on a note secured by a second mortgage on the debtors' place of residence. The debtors' monthly payments on the note and mortgage are $150.09.

At the time the petition for relief was filed, the debtors were $465.36 in arrears under the terms of the note and mortgage.

In their plan the debtors propose, pursuant to 11 U.S.C. § 1322(b)(3) [1] and (5) [2], to cure, over a period of 25 months, their $465.36 pre-petition mortgage arrearage and their post-petition arrearage of $328.64. The debtors propose to make the regular monthly payments outside the plan.

The bank objected to the debtors' plan on the grounds (1) that § 1322(b)(3) and (5) do not allow a Chapter 13 plan to provide for curing post-petition defaults on a loan secured by a mortgage lien on the debtors' residence; and (2) that 25 months is not a reasonable time within which to cure the default on the bank's loan.

## ISSUES

The issues are: (1) whether a Chapter 13 plan may provide for the curing of post-petition defaults on a loan secured by a mortgage lien on the debtors' residence; and (2) whether 25 months is a reasonable time within which to cure a default on a loan secured by a mortgage lien on the debtors' residence.

## DISCUSSION AND CONCLUSION

### I

■ Because the language of § 1322(b)(3) and (5) is unclear as to whether a post-petition default on a loan secured only by a security interest in the debtors' residence may be cured, the court, in interpreting the section, should seek the Congressional intent.

Subsections (3) and (5) of § 1322(b) allow a debtor to cure any default; however, the language of § 1322(b)(5) goes beyond (b)(3) in that it permits a plan to provide for curing a default on any secured or unsecured claim "on which the last payment is due after the date on which the final payment under the plan is due." This court

infers that Congress intended that § 1322(b)(5) alone should control the curing of defaults on claims on which the last payment is due after the final payment under the plan, especially, when the claim is secured by the debtors' principal residence. *See*, Senate Debate on Compromise Bill, 125 Cong.Rec. 517403–34 (daily ed. Oct. 6, 1978); *Western and Southern Life Insurance Company v. Soderlund*, 18 B.R. 12, 5 B.C.D.2d 1468 (Bkrtcy.S.D.Ohio 1981); *Advance Mortgage Corporation v. Land*, 14 B.R. 132, 8 B.C.D. 90, 5 C.B.C.2d 145 (Bkrtcy.N.D. Ohio 1981).

If Congress had intended for § 1322(b)(3) to apply to claims on which the last payment is due after the final payment under the plan is due, there was no need for § 1322(b)(5) since § 1322(b)(3) allows, without limitation, the curing of any default. Furthermore, by using § 1322(b)(3) to cure defaults on claims on which the last payment is due after the final payment under the plan is due, a debtor could circumvent the requirement of § 1322(b)(5) that the default be cured within a reasonable time.

Since the language of § 1322(b)(5) allows the curing, within a reasonable time, of *any* default on claims on which the last payment is due after the final payment under the plan is due, Congress, if it had intended to allow only the curing of pre-petition defaults, could have omitted the phrase "any default" and inserted, in lieu thereof, the phrase "pre-petition default". The language in § 1322(b)(5) requiring "maintenance of payments" does not limit a debtor's right to cure defaults to pre-petition defaults alone, it simply authorizes the debtor to maintain regular payments if he cures the default. This court, finding no requirement in § 1322(b)(5) that a debtor start regular payments as of the date of the filing of the petition for relief, feels that if a plan is sufficiently specific to allow the

1. 11 U.S.C. § 1322(b): Subject to subsections (a) and (c) of this section, the plan may—* * * (3) provide for the curing or waiving of any default; * * *.

2. 11 U.S.C. § 1322(b): Subject to subsections (a) and (c) of this section, the plan may—* * * (5) notwithstanding paragraph (2) of this sub-

section, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due; * * *.

court to determine exactly which payments are in default and are to be cured and precisely when the debtor proposes to resume his regular payments, then a debtor may use § 1322(b)(5) to cure post-petition defaults on claims on which the payment is due after the last payment is due under the plan.

Congress intended that Chapter 13 should have minimum mandatory provisions so that flexible repayment plans could be formulated to enable debtors to protect their assets. *See,* H.R.Rep.No.595, 95th Cong. 1st Sess. 117–18 (1977); S.Rep.No.989, 95th Cong. 2nd Sess. 141 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. Interpreting § 1322(b)(5) so as to allow debtors to cure both pre-petition and post-petition defaults while maintaining regular payments is consistent with the intent of Congress in making Chapter 13 a flexible means of reorganizing debts.

If § 1322(b)(5) is interpreted so that a debtor may not cure post-petition defaults (thus requiring him to recommence mortgage payments with the payment next due after his petition for relief is filed) a debtor may be forced to wait until he can resume the regular payments before seeking relief under Chapter 13. Such a delay may increase his financial difficulties and may result in a prolonged period of inequitable distribution of his dwindling assets; such would frustrate the underlying policy of Chapter 13 of providing an orderly and efficient satisfaction of his debts.

Any plan providing for the curing of a default and maintenance of the regular payments must comply with the confirmation requirements of 11 U.S.C. § 1325(a)—§ 1325(a)(3)[3] (good faith requirement) and § 1325(a)(6)[4] (feasibility requirement) are especially significant when the plan provides for the curing of a default on an obligation by the debtor's making

payments thereon. Should a debtor use § 1322(b)(5) in attempting to cure excessive post-petition defaults or in attempting to cure defaults on payments already due under a confirmed plan, a party in interest may move, pursuant to 11 U.S.C. § 1307(c), to have the case dismissed or converted to Chapter 7. A creditor has the right to seek relief from the automatic stay provided in 11 U.S.C. § 362 if he feels he is not adequately protected. 11 U.S.C. § 362(d).

The debtors' proposal to cure post-petition defaults on the bank's mortgage while maintaining the regular payments is not prohibited by § 1322(b)(5).

## II

■ In determining what is a reasonable time within which to cure a default pursuant to § 1322(b)(5), the following factors should be examined: (1) the necessity of the asset to an effective rehabilitation of the debtor; (2) the availability of the debtor's discretionary income to cure a default; (3) the amount of the default; (4) the time over which the default has accrued compared to the time within which it is to be cured; (5) the debtor's ability to meet the obligations of the plan; (6) the debtor's ability to continue current payments on the installment obligations. *In re Pollasky,* 7 B.R. 770 (Bkrtcy.D.Colo.1980).

■ In the instant case, the debtors are applying most of their meager income to curing the arrearages on the bank's mortgage[5] so that they may keep their home—an asset essential to their reorganization. Based upon these factors, and the trustee's recommendation, the court finds that 25 months is a reasonable time within which to cure the arrearages on the bank's note and mortgage.

---

**3.** 11 U.S.C. § 1325(a): The court shall confirm a plan if—* * * (3) the plan has been proposed in good faith and not by any means forbidden by law; * * *.

**4.** 11 U.S.C. § 1325(a): The court shall confirm a plan if—* * * (6) the debtor will be able to

make all payments under the plan and to comply with the plan; * * *.

**5.** The debtors' budget shows that they would have a monthly surplus of $31 after payments to their Chapter 13 plan and their other expenses.

## III

The debtors' plan meets the requirements of § 1325 and should be confirmed.

## ORDER

Therefore, IT IS ORDERED, ADJUDGED AND DECREED that confirmation of the debtors' plan is granted.