**In re Donald Lloyd KING, and Evelyn Ablando King, aka Evelyn Perdon Ablando, Debtors.**

**Bankruptcy No. 80–02077–P.**

United States Bankruptcy Court, S. D. Cal.

Nov. 13, 1980.

John Seitman, Scales, Patton, Ellsworth & Corbett, San Diego, Cal., for Central Federal.

Richard R. Ravreby, Carlsbad, Cal., for debtor.

Harry W. Heid, San Diego, Cal., trustee.

## MEMORANDUM OPINION REGARDING CURING OF DEFAULT UNDER 11 U.S.C. § 1322(b)(5)

JAMES W. MEYERS, Bankruptcy Judge.

### I

On August 4, 1980, the Debtors filed their petition and plan seeking relief under Chapter 13 of the United States Bankruptcy Code ("Code"). On September 15, 1980, they filed their amended Chapter 13 plan. This prompted Central Federal Savings and Loan Association ("Central Federal") to file its specification of objections to the amended plan, which were considered by this Court on October 3, 1980, in a hearing on confirmation of the amended plan. At that time, the Court confirmed the debtors' plan over Central Federal's objection. This opin-

ion is filed in support of that order of confirmation.

### II

### FACTS

On February 3, 1979, the debtors entered into a transaction with a construction company whereby they contracted to have certain improvements made to their residence. The agreement, among other things, obligated the debtors to pay to the construction company the sum of $121.61 per month for a term of fifteen years, commencing March 5, 1979. The debtors' obligation to pay was also secured by a deed of trust covering their residence, which was subsequently assigned, along with the contract, to Central Federal.[1]

Monthly payments were evidently made by the debtors on the contract for some period of time. In June of 1980, or thereabouts, however, the debtors defaulted on their obligation to Central Federal. Then Central Federal took steps to enforce their contract and trust deed, only to have their actions stayed by the filing of the debtors' petition.

The debtors' amended plan proposes to cure an arrearage of $2,702.26 owed Central Federal by payment of $102.08 monthly under the amended plan.[2] It is contemplated that the amended plan will have a term of approximately thirty months, with the Central Federal arrearage being paid in full in a slightly shorter period of time. Under the plan, all current payments on the contract will be paid by the debtors directly to Central Federal.

### III

### DISCUSSION

Central Federal finds fault with the length of time involved in the debtors' proposal to cure. It is claimed that a cure period which equals or approximates the length of the plan is unreasonable under

---

1. The deed of trust was subordinate to one held by Transamerica Mortgage.

2. The sum of $75.06 will be applied to pay back the principal arrearage, while $27.02 will cover interest on the arrearage.

Section 1322(b)(5) of the Code. This section allows a plan to "provide for the curing of any default within a reasonable time ... on any secured claim...." where the last payment on the claim falls due after the final payment under the plan. 11 U.S.C. § 1322(b)(5). Central Federal further suggests that the cure period must be "significantly shorter" than the three year period recommended for Chapter 13 plans set forth in Section 1322(c). *See* 11 U.S.C. § 1322(c). The debtors, of course, do not agree with this view.

The question of what is a "reasonable time" to cure a default under Section 1322(b)(5) is not addressed by the Code. *See* 11 U.S.C. § 1322(b)(5). Nor does the Code's legislative history provide any guidance on this question, *see* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 429 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 141 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787, and the commentators are also unhelpful. *See* 5 *Collier on Bankruptcy* ¶ 1322.01[3][E] (15th ed.); 5 *Bkr.L.Ed.* § 46.11. This leaves the determination of what will be a "reasonable time" under Section 1322(b)(5) committed to the discretion of the Court.

In the exercise of this discretion, it is clear that what will be a "reasonable time" under Section 1322(b)(5) is a question to be decided upon the facts and equities present in each case. *See In re Coleman*, 2 B.R. 348, 350, 5 B.C.D. 1300, 1301 (Bkrtcy.W.Ky. 1980), *aff'd*, 5 B.R. 812, 6 B.C.D. 795 (Bkrtcy.W.D.Ky.1980). *See also Matter of Epps*, 2 B.R. 737, 6 B.C.D. 379, 381 (Bkrtcy. S.N.Y.1980) ("balloon payment" of all deficiencies at end of plan held unreasonable). It has also been found, however, that a "reasonable time" under Section 1322(b)(5) is not synonymous with the three year period set forth in Section 1322(c). *See In re Coleman, supra,* 2 B.R. at 350, 5 B.C.D. at 1301.

Under this case by case approach, certain equitable factors must be considered in evaluating the reasonableness of a proposal under Section 1322(b)(5). First of all, the debtors' payment record must be con-

sidered. In this regard, a claimant who has not received any payments on his debt is in a much better position to question the soundness of a proposal to cure, than one who has received partial repayment. Complete disregard for the contractual expectations of a creditor, on the one hand, evidences a lack of good faith on the debtor's part. It may make a proposal to cure unacceptable, given the fact that the ability to cure under Section 1322(b)(5) is already a unique right allowing modification of a secured claim on the debtor's principal residence. *Compare* 11 U.S.C. § 1322(b)(5) *with* 11 U.S.C. § 1322(b)(2). *See also* 5 *Bkr.L.Ed.* § 46.11. Thus, it should not be used to shield an outright abuse of contractual expectations. On the other hand, many debtors may have made a *bona fide* attempt at repayment and have not flagrantly disregarded their obligations. Such is apparently the case here, as the debtors have made at least a portion of their payments to Central Federal.

Secondly, the length of the repayment period on the actual obligation should be considered. A proposal to cure covering a period of time shorter than three years cannot be considered a significant deviation from the parties bargain when it is contrasted with an original obligation having a lengthy repayment term. *But see In re Coleman, supra,* 2 B.R. at 349–50. On the other hand, a short term debt envisions prompt payment in full, and a proposal to cure may well be termed unreasonable if it drastically alters this expectation. Given the long term nature of the obligation here, the debtors' proposal to cure their arrearage in roughly two years cannot be considered a significant variation of the original bargain.

Thirdly, the reason for the arrearage must be considered. If an obligation has simply been ignored, or the debtors have merely chosen to divert available funds for other expenditures, their arrearage must be viewed differently than one which arose for reasons which are beyond the debtors control. Here, for instance, the default was evidently occasioned by marital discord and

its related disruption of the home. This Court does not, therefore, view the debtors' default as skeptically as if it had been caused intentionally, or was otherwise inexcusable.

Fourthly, the nature of the property held as security for the debt, if any, must be taken into account. For example, the Court would view a proposal to cure involving realty purchased solely as a speculative investment, differently than an attempt to cure a default on a debtor's principal residence. There is clearly a pressing need to salvage the debtor's own home, and although the interests involved may not be insignificant, there is surely a less grievous loss at stake when dealing with an investment property which the debtor does not occupy. Here, the debtors have a significant interest in rehabilitating their obligation with Central Federal as they naturally need to keep their home.

And finally, inquiry should be made into whether the debtors are putting forth their best effort to cure their default. This will involve a comparison of the amount being paid to cure the default with the total monthly payments made under the plan, and the other obligations being treated by the plan.

In this case, the debtors are giving their best effort. They intend to devote roughly 40% of the monies paid monthly under their plan towards the debt with Central Federal, which payment will include interest on the arrearage. The other payments under the plan will be applied to pay off their unsecured creditors in full, and to secured creditors holding claims on such essentials as their automobile and their furniture.

Based on all these considerations, the debtors' approach to remedying their default cannot be termed halfhearted or inequitable. That being the case, the Court has concluded that their method of cure is reasonable.[3]

## IV

## CONCLUSION

The debtors' proposal is reasonable within the meaning of Section 1322(b)(5) of the Code and Central Federal's objection is therefore overruled.

---

**3.** Central Federal finds comfort in the case of *In re Ballard*, 4 B.R. 271 (Bkrtcy.E.Va.1980), as it purportedly held that the debtor's failure to cure within five months of filing the petition meant that Section 1322(b)(5) was "not satisfied". The Court does not agree. The deciding factor in *Ballard* was not the length of time available to cure, but the fact that the debt in question, a ninety day demand note, could not be cured under Section 1322(b)(5) in any event, as "the maturity date of the last payment [did] not extend beyond the final payment under the plan." *In re Ballard, supra*, 4 B.R. at 276.