In re William O. BECKMAN, aka Bill Beckman, Jr., dba M.J.R. Properties, Inc., Mary Jo Beckman, aka Mary Jo Riley Beckman, aka Mary Joline Beckman, aka Mary Jo Riley, Debtors.

HOME FEDERAL SAVINGS AND LOAN ASSOCIATION OF SIOUX CITY, SIOUX CITY, IOWA, Plaintiff,

v.

William O. BECKMAN and Mary Jo Beckman, Defendants.

Bankruptcy No. 79–04359.
Adv. No. 80–0016.

United States Bankruptcy Court,
N. D. Iowa, W. D.

Feb. 18, 1981.

---

George F. Madsen, Lawrence D. Kudej, Sioux City, Iowa, for plaintiff.

Donald H. Molstad, Sioux City, Iowa, for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDERS WITH MEMORANDUM

WILLIAM W. THINNES, Bankruptcy Judge.

The matter before the Court is plaintiff's complaint for relief from automatic stay. Trial was held at which Attorneys George F. Madsen and Lawrence D. Kudej represented the plaintiff, and Attorney Donald H. Molstad represented the defendants/debtors. Certain factual matters were stipulated by the parties. The matter being fully submitted, the Court makes the following Findings of Fact, Conclusions of Law, and Orders:

### FINDINGS OF FACT

1. Defendants/debtors, William O. Beckman and Mary Jo Beckman, are the record owners and in possession of the following described real estate, situated in Woodbury County, Iowa:

> That part of the West Three Hundred Fifty-five and Three Tenths (355.3) feet of the West Half (W ½) of the North East Quarter (NE ¼) of the North East Quarter (NE ¼) of Section Twenty-four (24), Township Eighty Nine (89) North, Range Forty Eight (48), West of the Fifth Principal Meridian in the County of Woodbury and State of Iowa, lying South of the Center line of Military Road.

2. On February 10, 1976, defendants made, executed and delivered to plaintiff their promissory note whereby they agreed to pay plaintiff the principal sum of $36,000.00, due in installments of $324.00 on the first day of April, 1976, and on the first day of each and every month thereafter until the principal and interest are fully paid, interest at the rate of 9% to be first deducted from said monthly payments and balance applied to principal.

3. On the same date, February 10, 1976, defendants, in order to secure said note, made, executed, and delivered to plaintiff their real estate mortgage conveying to plaintiff the real estate hereinabove described, which mortgage in the sum of $36,000.00 was duly filed for record in the office of the Recorder of Woodbury County, Iowa, on the 10th day of February, 1976, and recorded in Roll 46, Image 699.

4. On September 19, 1975, defendants made, executed and delivered to plaintiff their promissory note whereby they agreed to pay plaintiff the principal sum of $5,010.00, due in installments of $115.30 on the 20th day of October, 1975, and on the 20th day of each and every month thereafter until the principal and interest are fully paid, interest at the rate of 13.5% to be first

deducted from said monthly payments and balance applied to principal.

5. On February 10, 1976, defendants, in order to secure said note, made, executed and delivered to plaintiff their real estate mortgage conveying to plaintiff their real estate hereinabove described, which mortgage in the sum of $5,010.00 was duly filed for record in the office of the Recorder of Woodbury County, Iowa, on the 13th day of February, 1976, and recorded in Roll 46, Image 904.

6. Defendants/debtors first became delinquent in their payments on plaintiff's notes and mortgages when they failed to make the October, 1979, payment on the February, 1976, mortgage, and when they failed to make the August, 1979, payment on the September, 1975, mortgage.

7. Plaintiff's notes and mortgages each provide that in event of default in any of the terms thereof, plaintiff might declare the whole balance on said notes due and payable at once, without notice, and that interest may be charged for default. The said notes and mortgages provide for the payment of statutory attorney's fee and costs of collection in the event of foreclosure. Plaintiff's mortgages provide that in any action brought for any sum due, plaintiff is entitled to recover all sums paid for insurance, delinquent taxes, court costs and expenses, and the cost of continuing the abstract of title, with interest.

8. Plaintiff's liens are secured claims within the purview of Bankruptcy Code § 1322(b)(2) in that the above-described real estate is defendants' principal residence.

9. Delinquency on the first real estate mortgage, including principal, interest, and late charges for the months of October, 1979, through May, 1980, is $2,708.64. The deficiency on the second mortgage, including principal, interest and late charges from August, 1979, through April, 1980, is $1,037.70, for a total of $3,746.34. Delinquent real estate taxes, including penalty, as of date of trial, were $2,418.43, all of which delinquencies were stipulated at trial.

10. Approximately thirty months of payments would be required to cure the defaults as proposed by debtors' Chapter 13 Plan.

11. Under the circumstances of this case, thirty months is a reasonable time within which to cure defaults in payments to plaintiff.

### CONCLUSIONS OF LAW

1. Section 1322(b)(5) provides for the curing of defaults in payments to creditors holding claims secured only by a security interest in the debtors' principal residence.

2. Defendants/debtors' Chapter 13 Plan provides adequate protection of plaintiff's interests.

### ORDER

IT IS THEREFORE ORDERED plaintiff's complaint to lift and modify the stay is denied and dismissed, with the condition that if debtors shall, at any time, fail to make any of the payments to plaintiff provided for by the debtors' Chapter 13 Plan or under the original agreement with plaintiff, plaintiff may move to have this matter reopened.

### MEMORANDUM

Plaintiff's counsel argues that the automatic stay provided by § 362 of the Bankruptcy Code should be lifted or modified as to plaintiff so that plaintiff can proceed to foreclose its mortgages against debtors' homestead. In the alternative, plaintiff prays that the Court give plaintiff adequate protection by requiring defendants/debtors to immediately pay all delinquent amounts of principal and interest as well as all of the delinquent real estate taxes and penalties and escrow installments.

### *Applicability of Section 1322(b)(5)*

To support its complaint for lifting of the automatic stay, plaintiff's counsel argues that § 1322(b)(2), by providing that a Chapter 13 Plan may not modify the rights of holders of claims secured only by a security interest in a debtor's principal resi-

dence, precludes any treatment whatsoever of such a claim, even to cure defaults. This argument ignores the clear language of § 1322(b)(5), which provides:

(5) notwithstanding paragraph 2 . . ., [the plan may] provide for the curing of *any* default within a reasonable time and maintenance of payments while the case is pending on *any* unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due. [emphasis added]

The legislative history of this section makes it clear that the intent of Congress was to allow for the curing of defaults on home mortgage payments under a Chapter 13 Plan: "It is intended that a claim secured by the debtor's principal residence may be treated with under § 1322(b)(5) of the House amendment." 124 *Cong.Rec.* H 11,106 (Sept. 28, 1978); S 17,423 (Oct. 6, 1978).

*Collier on Bankruptcy* also leaves no doubt that debts secured by the debtor's principal residence may be provided for under the Plan:

Such a claim may nonetheless be dealt with or provided for by the plan, so as to require that the contract payments be made through a Chapter 13 trustee, for instance, or to cure a default. 5 *Collier on Bankruptcy* (15th ed.) ¶ 1322.01

Finally, the Chapter 13 Plan may provide for the curing of a default on a claim secured only by a security interest in real property used as the principal residence of the debtor, provided the final payment on the secured claim is not due until after the due date of the final payment under the Chapter 13 Plan. *Id.*

The debtor may avail himself of the provisions of § 1322(b)(5) even though the long-term debt is secured only by a security interest in real property which is the principal residence of the debtor. *Id.* at ¶ 1322.01[E]

Holdings of Bankruptcy Courts who have dealt with the curing of such defaults under a Chapter 13 Plan agree with this reasoning.

Bankruptcy Judge Schwartzberg in *In Matter of Breuer*, 4 B.R. 499, 6 B.C.D. 136, 1 C.B.C.2d 722 (Bkrtcy.S.D.N.Y.1980), held:

It is intended that the debtor should have an opportunity to protect his assets by agreeing to repay his creditors while retaining his property during the Chapter 13 proceeding. The debtor's retention of his residence is palpably envisioned under Chapter 13 provided his plan and the proposed financial arrangements can pass muster. Therefore, not only must the default on the first mortgage be cured, but additionally, the real estate tax arrearage must be satisfied within a reasonable time.

The Florida case of *United Companies Financial Corporation v. Brantley*, 6 B.R. 178, 6 B.C.D. 932 (Bkrtcy.N.D.Fla., 1980) held, in a case where a creditor filed a complaint to lift the stay to proceed with sale under a judgment of foreclosure, that if the mortgage has not already merged into the judgment, then, as provided in § 1322(b)(5), a plan may provide for the curing of any default within a reasonable time and for the maintenance of payments while the case is pending.

Even if the exception to § 1322(b)(2) was applicable and the security consisted only of the debtors principal residence, § 1322(b)(5) with respect to the curing of defaults expressly applies notwithstanding the exception to § 1322(b)(2). *Id.* at 938

### Reasonable Time

■ A more difficult question is whether the time proposed for the payments to cure the default is "reasonable" as required by § 1322(b)(5).

What is a "reasonable time" is a fact question which must be decided on a case-by-case basis, considering the circumstances of the particular situation. *In re Coleman*, 2 B.R. 348, 5 B.C.D. 1300, 1 C.B.C.2d 530, 2 B.R.W. 348 (Bkrtcy.W.D.Ky.1980), aff'd, 5 B.R. 812, 6 B.C.D. 795 (W.D.Ky.1980); *In re King*, 7 B.R. 110, 3 C.B.C.2d 110 (Bkrtcy.S. D.Cal.1980). The *Coleman* case held that

the three-year period provided for in § 1322(c) for payments under a plan is not synonymous with the "reasonable time" within which defaults may be cured. Another bankruptcy court has held that "reasonable time" would not include a three-year plan with a "balloon" payment at the end. *In Matter of Epps*, 2 B.R. 737, 6 B.C.D. 379, 2 C.B.C.2d 97 (Bkrtcy.S.D.N.Y. 1980).

Judge Meyers in *In re King, supra*, set out five factors to be considered in determining reasonable time, and this Court adopts these factors. They are:

(1) Debtor's payment record;

(2) Length of the repayment period on the original obligation;

(3) The reason for the arrearage;

(4) The nature of the security;

(5) Whether the proposal to cure represents the debtor's best effort.

Applying these factors to the case before us, we find, as to factors (1) and (2), that the Beckmans' primary mortgage on their home was for thirty years, beginning March 1, 1976. Payments on the $36,000 obligation were maintained until October of 1979, the month before the filing of their Petition under Chapter 13. By the time of trial, May, 1980, payments for the month of October, 1979, through May of 1980 were in arrears, but an agreement had been reached and Order entered that regular mortgage payments starting with June would be made outside the Plan. The second mortgage, which was for a home improvement loan, was made in October of 1975 and was to run for five years. Payments on the original obligation of $5,010 were current until August of 1979. This is not a case, then, where debtors entered into an obligation without the intent or reasonable expectation of being able to carry out the terms of the agreement.

The debtors value their home at $45,000 and feel they have an equity of about $9,000, after the total arrearages of approximately $5,500.

As to factor (3), the reason for the arrearage, no evidence was presented.

The nature of the security, factor (4), is, of course, the debtors' home. The fact that the property is the debtors' home, and that they have substantial equity in it, afford assurance to the creditor that payment will be made.

As to factor (5), the debtors' Chapter 13 Plan provides for payment to the trustee of $312.40 per month. Their other monthly expenses, including regular payments on the two mortgages, are about $1,036. Their monthly income leaves around $100 to cover inflation and unexpected expenses. Considering the current rate of inflation, and that nothing appears in the budget for contingencies, the Court feels that the payments provided for are the most that the debtors can reasonably be expected to handle with their income.

Considering all of these factors together, then, and the fact that no evidence was presented that thirty months is not a reasonable time for the curing of default, the Court finds that debtors' Plan provides for curing of default within a reasonable time as required by § 1322(b)(5) of the Bankruptcy Code.