**In re Donald Lloyd KING, and Evelyn Ablando King, aka Evelyn Perdon Ablando, Debtors.**

**CENTRAL FEDERAL SAVINGS AND LOAN ASSOCIATION, Appellant,**

v.

**Donald Lloyd KING and Evelyn Ablando King, aka Evelyn Perdon Ablando, Appellees.**

**BAP No. SC–81–1013–LVH.**

**Bankruptcy No. 80–02077–P.**

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued June 18, 1981.

Decided July 26, 1982.

John M. Seitman, Scales, Ellsworth & Corbett, San Diego, Cal., for appellant.

Richard R. Ravreby, Ravreby & Connolly, Carlsbad, Cal., for appellees.

Before LASAROW, VOLINN and HUGHES, Bankruptcy Judges.

## OPINION

VOLINN, Bankruptcy Judge:

On August 4, 1980, the Kings filed a petition under Chapter 13 of the Bankruptcy Reform Act of 1978. They were $2,702.26 in arrears on payment on the second deed of trust held by Central Federal Savings and Loan Association (Central) on their home. They also owed $3,805 to creditors holding security interests in personal property and $468 to unsecured creditors. Their amended plan, which the court confirmed over Central's objection, provided that Central would receive $108.08 on the arrearage per month, of which $27.02 was for interest. The Kings would make their regular monthly payments directly to Central. Payments to the holder of the first deed of trust would also be made outside the plan. The other creditors would be paid in full under the plan which would be completed in approximately thirty months. The amount of the monthly payment to Central would be increased as the other creditors' claims were satisfied. The overall effect of the plan is that Central's claim will be satisfied over the entire term of the plan while the other creditors will be paid in a somewhat shorter period of time.

Central objected to the plan on the ground that the proposal to cure the arrearage failed to comply with § 1322(b)(2) and (5) of the Bankruptcy Code in that the default would not be cured within a reasonable time. The trial court concluded, under the facts of this case, that the proposal to cure the arrearage to Central was reasona-ble and confirmed the plan. Central appeals that decision.[1]

## I.

Section 1322 of the Bankruptcy Code provides, in pertinent part:

(b) Subject to subsections (a) and (c) of this section, the plan may—

. . . .

(2) Modify the rights of holders of secured claims; other than a claim secured only by a security interest in real property that is the debtor's principal residence . . . ;

. . . .

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

Central asserts that a cure period on a default on a loan secured by the debtor's principal residence which equals or approximates the length of the plan is per se unreasonable under § 1322(b)(5). It maintains that the time within which such a default is cured must be significantly shorter than the three-year period recommended for Chapter 13 plans in general under § 1322(c).

Although § 1322(b)(3) allows a debtor to cure *any* default, it is apparently limited by § 1322(b)(2) which prohibits the modification of the rights of a holder of a claim which is secured by a security interest in the debtor's principal residence. Section 1322(b)(5) ameliorates the limitation of § 1322(b)(2), in effect providing that the cure of default provision of § 1322(b)(3) shall be available to the debtor even though he may not modify the principal debt. Nothing in the legislative history or the statute suggests that cure of the default is restricted to a time less than the period of the plan as contended by Central.

It is apparent from the legislative history that the inclusion of § 1322(b)(5) is the

---

result of a compromise between the House and Senate. 124 Cong.Rec.H. 11,106 (Sept. 28, 1978); S. 17,423 (Oct. 6, 1978). The subsection requires: (1) that the last payment due on the obligation is due after the date on which the final payment under the plan is due; (2) that the court undertake an independent inquiry into the proposal to cure the default; and (3) that the court find that the proposal is reasonable under the circumstances. See 5 *Collier on Bankruptcy* ¶ 1322.01 at 1322–8 (15th ed. 1981).

The cases uniformly hold that "reasonable time" under § 1322(b)(5) is a flexible concept and that whether a proposal to cure an arrearage is reasonable must be determined on a case by case basis. Thus, the ultimate determination is within the sound discretion of the trial court. *In re Coleman,* 2 B.R. 348, 5 B.C.D. 1300, 1 C.B.C.2d 530 (Bkrtcy.W.D.Ky.1980), aff'd, 5 B.R. 812, 6 B.C.D. 795, 2 C.B.C.2d 736 (W.D.Ky.1980); *In re Acevedo,* 9 B.R. 852, 4 C.B.C.2d 178 (Bkrtcy.E.D.N.Y.1981); *In re Pollasky,* 7 B.R. 770 (Bkrtcy.D.Colo.1980).

Central cites *In re Coleman, supra,* to support its contention that Congress did not intend "reasonable time" under § 1322(b)(5) and "three years" to run as chronological parallels. The debtor in *Coleman* contended that a proposal to cure a default under § 1322(b)(5) within three years was reasonable. The court considered the factual context and held that "[w]e are *not* attempting to attach affirmative meaning to the intentionally flexible term, 'reasonable time'. We simply hold that three years is not a reasonable time within which to cure a default, on the facts of this case." *Id.* 2 B.R. at 350, 5 B.C.D. at 1301.

In *In re Lynch,* 12 B.R. 533, 7 B.C.D. 1159 (Bkrtcy.W.D.Wis.1981) the court overruled the creditor's objection to the debtor's proposal to cure an arrearage in their mortgage within the thirty-six months over which the plan was scheduled. The court examined the same factors as those examined in the instant case and found that the time within which the debtors proposed to cure the default was reasonable. In yet another case a court confirmed a plan, over objection, where the debtor proposed, pursuant to § 1322(b)(5), to cure an arrearage in twenty-four months. The court stated that "the concept of 'reasonable time' is one which must be judged on a case-by-case basis." *In re Sapp,* 11 B.R. 188, 190 (Bkrtcy.S.D.Ohio, 1981). See also *In re Soderlund,* 7 B.R. 44, 3 C.B.C.2d 255 (Bkrtcy.S.D.Ohio, 1980). Another judge utilized the analysis set forth in the instant case, and approved a plan under which the debtors proposed to cure defaults in residentially secured loans over a thirty-month period. *In re Beckman,* 9 B.R. 193 (Bkrtcy.N.D. Iowa, 1981). It appears that this term was coextensive with the term of the plan.

The trial court engaged in an extensive analysis of the facts in this case, evaluating the application thereto of the reasonable standard of § 1322(b)(5). A particularly important factor was the trial court's comparison of the terms of the underlying debt with the proposal to cure the arrearage. He concluded that the King's proposal to cure the default in approximately thirty-one months (by mid-1983 at the latest), compared to the date the last payment under the fifteen-year loan agreement was due (in 1944), weighed heavily in favor of the reasonableness of the proposal to cure the default, stating "the debtor's proposal to cure their arrearage in roughly two years cannot be considered a significant variation of the original bargain."

It is contended that if the secured creditor's default is cured over a longer period than it would take to pay other classes of creditors, this would per se bring about an unreasonable aspect to the time for curing default. While consideration of relative equities as amongst various classes of claimants might be a factor in evaluating the quality of reasonableness of time for cure of a default, nothing in the Code requires absolute equality in time of payment for all categories and classes of creditors. Here, the difference in time, considering the length of time appellant's debt will be outstanding, is insignificant. Even without this, the basic conclusion of the trial court in the context of the facts is not rendered unreasonable by the arbitrary application of the single element of relative time of payment.

In conclusion, Central's argument that a proposal to cure a default on a residentially secured obligation cannot, as a matter of law, extend over the life of the plan is not supported by either the legislative history of § 1322(b)(5), or case law interpreting that section. It has failed to establish that the trial court, in this case, abused its discretion in confirming the plan.

We AFFIRM the judgment of the court.

HUGHES, Bankruptcy Judge, dissenting:

I dissent. While I agree that "reasonable time" as used in 11 U.S.C. § 1322(b)(5) is a flexible concept and that it must be left to the sound discretion of the court, I believe that the term as used requires that the cure be completed in "the most expeditious time, consistent with true rehabilitation..." *In re Pollasky*, 7 B.R. 770 (Bkrtcy.D.Colo.1980). Since the plan as confirmed gave preference to other creditors over the section 1322(b)(5) creditor, it did not "provide for the curing of" the default to appellant "within a reasonable time."

If appellant held a note that was not secured by the debtor's principal residence, 11 U.S.C. § 1322(b)(2), we would not be concerned with the requirement that the default be cured "within a reasonable time." Section 1322(b)(3) permits the curing of defaults on debts other than that held by appellant and does not require the cure to be completed within a reasonable time.

This does not mean there is no time limit on a section 1322(b)(3) cure; such a provision is permitted in a plan but a plan cannot exceed three years (five years for cause). 11 U.S.C. § 1322(c). Thus a section 1322(b)(3) cure must be completed within the life of the plan.

By inserting the "reasonable time" requirement for section 1322(b)(5) cures, Congress presumably meant to treat such cures differently than section 1322(b)(3) cures. It seems fair to assume that a "reasonable time" was intended to be less than the life of the plan in the usual case. Hence, the definition in *Pollasky*, supra: "The most expeditious time, consistent with true rehabilitation..."

Congress no doubt recognized that an expeditious cure of a long-term indebtedness on a debtor's home is not merely in the creditor's interest. It is also very much in the debtor's interest to reinstate the loan at the earliest date possible and thereby avoid foreclosure even if circumstances prevent the debtor from completing the balance of the plan.

What constitutes "the most expeditious time," of course, must be left to the discretion of the court, which must also consider the rehabilitation objective. In the absence of special circumstances, I can see no justification for disbursing to general, unsecured creditors before the section 1322(b)(5) cure is completed. On the other hand, a level of payments to personal property secured creditors may be required, consistent with the debtor's rehabilitation.

I would reverse and remand for consideration of the factors discussed.