**In re Vernon Michael LaCRUE, SS # 524–62–4747, Dolores (NMN) LaCrue, SS # 521–76–8889, Debtors.**

**Bankruptcy No. 83 B 1001 G.**

United States Bankruptcy Court, D. Colorado.

Sept. 12, 1983.

John Berman, Denver, Colo., for debtors.

Charles Davis, for Chapter 13 standing trustee.

## MEMORANDUM OPINION

JAY L. GUECK, Bankruptcy Judge.

THIS MATTER came on for hearing on August 15, 1983, on Objections to Confirmation filed by the Chapter 13 Trustee, and by Norwest Mortgage, Inc., (formerly Banco Mortgage Company, hereinafter referred to as "Norwest"), a secured creditor. The objection of both parties is that the debtors' proposal in their amended Chapter 13 Plan to cure arrearages in mortgage payments over a period of 33 months is unreasonable under 11 U.S.C. § 1322(b)(5).

The debtors reside in Denver, Colorado. Their home is encumbered by a First Deed of Trust in favor of Norwest in the amount of $56,000.00. There is also a Second Deed of Trust in the amount of $5,200.00. The monthly payment due Norwest is $682.00. It is unclear what the payment is on the Second Deed of Trust. The Norwest mortgage is ten months in arrears and the second mortgage is four months in arrears. The second mortgage holder has not filed an objection to confirmation. Norwest has.

The evidence indicated that the arrearages began in October, 1982, when Mr. LaCrue lost his position as an electrician. In November of 1982, when the LaCrues tendered the payment for October, 1982, it was refused by Norwest. As a result of this refusal and the absence of counsel, no further mortgage payments were made between October, 1982, and June, 1983. Mortgage payments have been made since counsel was obtained.

The subject real property was sold as a result of the defaults on March 15, 1983, at a Public Trustee's sale. The record reflects that the joint Chapter 13 Petition was filed on March 11, 1983. Thus, the validity of the foreclosure sale is seriously in question.

In a Chapter 13 Plan, the debtors propose to cure the arrearages on both the First and Second Deeds of Trust by paying the respective mortgagees the amount of the arrearage capitalized at a rate of 12.75% over a period of 33 months. The capitalization rate is the same as the contract interest rate in the Norwest Deed of Trust. The debtors intend to make the regular monthly payments on the Deeds of Trust outside the Plan. Additionally, the Plan requires payments within the Plan to be accomplished over a period of 35 months, and provides for 100% payments to allowed unsecured claimants.

The objections focus on 11 U.S.C. § 1322(b)(5). This provision of the Code states as follows:

"(b) Subject to subsections (a) and (c) of this section, the plan may—

"(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;"

The determination of what is a reasonable time under § 1322(b)(5) is committed to the discretion of the Court. *In re King,* 23 B.R. 779 (Bkrtcy.App.Pan., 9th Cir.1982)—hereinafter referred to as "King II"; *In re*

*King,* 7 B.R. 110 (Bkrtcy.Cal.1980)—hereinafter referred to as "King I". In my view, the leading cases on this issue are *King I, King II* and *In re Pollasky,* 7 B.R. 770 (Bkrtcy.Colo.1980). In *Pollasky, supra,* at page 771, the Court stated as follows:

"The key to the Court's consideration is whether the time proposed for cure by the Debtors is a "reasonable" time within the context of the statutory provision for curing default.... A reasonable time as used in § 1322(b)(5) is simply the most expeditious time, consistent with true rehabilitation, within which the debtor can cure defaults.... The Court must weigh the necessity of the asset in an effective rehabilitation of the Debtors, the availability of the Debtors' discretionary income to cure a default, the amount of the default, and the time over which it has accrued compared to the time within which it is intended to cure. The Debtors must also demonstrate the ability to meet the obligations of the plan, as well as continue current payments on these installment obligations."

The basic premise is that the reasonableness of the time involved is simply determined by common sense.

The Court in *King I, supra,* concluded that a five-factor analysis should be applied to resolve the issue of reasonableness. There, the Court stated, at pages 112–113:

"Under this case by case approach, certain equitable factors must be considered in evaluating the reasonableness of a proposal under § 1322(b)(5). First of all, the debtors' payment record must be considered.... Secondly, the length of the repayment period on the actual obligation should be considered. A proposal to cure covering a period of time shorter than three years cannot be considered a significant deviation from the parties bargain when it is contrasted with an original obligation having a lengthy repayment term.... Thirdly, the reason for the arrearage must be considered.... Fourthly, the nature of the property held as security for the debt, if any, must be taken into account. For example, the

Court would view a proposal to cure involving realty purchased solely as a speculative investment different than an attempt to cure a default on a debtor's principal residence.... And, finally, an inquiry should be made into whether the debtors are putting forth their best effort to cure the default."

Additionally, the Bankruptcy Appellate Panel of the Ninth Circuit set forth that "nothing in the Legislative History suggests that cure of default is restricted to a time less than the period of the Plan." *King II, supra,* at page 780. Two preliminary observations should be made before a consideration of the above factors is undertaken. First, the Chapter 13 Trustee's Objection is predicated primarily upon the policy of objecting to cure periods in excess of 18 months. Apparently, this is due to the administrative burden incurred in overseeing such plans. However, I cannot find, as a matter of law, that this policy overrides a case by case analysis by the Court. Secondly, Norwest did not appear at the confirmation hearing to pursue its objection. Hence, I must presume that it has no great concern about the reasonableness of the cure period.

I conclude the cure period is reasonable after considering the above decisions and the factors cited therein. The debtors are making their best effort to cure the arrearages and otherwise repay all creditors, secured and unsecured, consistent with the debtors' financial ability. Although there is a $95.00 per month emergency fund, there does not exist a substantial amount of discretionary income not devoted to repayment of creditors. The debtors' uncontradicted testimony exhibited a willingness and ability to finance the Plan. The residence is obviously necessary to an effective rehabilitation of the debtors. Its stated value of $62,000.00 would make it easy for the debtors to walk away from the first and second mortgage indebtedness and let the creditors scramble for any deficiency. Instead, the debtors are making an effort to rehabilitate themselves, satisfy their indebtedness and preserve their property. Further, the debtors made some payments on

the Deeds of Trust before the arrearages accrued due to Mr. LaCrue's sudden unemployment. Most importantly, the cure of arrearages at the contract rate, which will be complete in May, 1986, when considered in connection with the Deed of Trust which will not be paid off until June of 2007, is not a significant departure from the original repayment schedule. I am satisfied that once proper counsel was obtained, appropriate action was taken by the debtors to make the current mortgage payments and improve upon the content of the Plan.

Based upon the foregoing, the Amended Plan filed by the debtors on June 28, 1983, is hereby confirmed.