**In re Paul E. VAN GORDON, Sarah L. Van Gordon, Debtors.**

**Bankruptcy No. 86–20401.**

United States Bankruptcy Court, D. Montana.

Jan. 27, 1987.

Donald MacDonald, IV, Missoula, Mont., for debtor.

Harold Dye, Missoula, Mont., trustee.

M.O. Wordal, Great Falls, Mont., for FBS.

## ORDER

JOHN L. PETERSON, Bankruptcy Judge.

In this Chapter 13 case, the Debtors propose to pay $1,609.00 per month to FBS Mortgage Corp., a secured creditor, to cure past arrearages and decelerate the home mortgage, pay First Bank Western outside the Plan, and pay $200.00 a month to the Trustee for payment in full of unsecured creditors. FBS filed objections to the Plan stating it was not feasible and there was no provision for payment of interest on the arrearages. The monthly installment due FBS is $1,209.00, and the Debtors propose to pay the arrearages at the rate of $400.00 per month for 36 months, at which time they will make a final balloon payment of the unpaid arrearage. According to FBS, the amount of arrearage is $20,553.00. At $400.00 per month, the Debtors' payments would equal $14,400.00. The Trust Indenture and Note executed in favor of FBS by the Debtors provides for monthly payments of $1,097.77 until September 1, 1998, at 11% interest per annum. According to the Proof of Claim of FBS, at the date of bankruptcy, the outstanding debt totaled $106,046.50, based on the following items:

| | | |
|---|---|---|
| Principal | – | $90,685.05 |
| Interest to 7/10/86 | – | 12,735.69 |
| Late charges | – | 553.63 |
| Budget deficit | – | 1,163.22 |
| Foreclosure expenses | – | 908.91 |
| Title report 100.00 | | |
| Publication 258.91 | | |
| Atty fees 550.00 | | |

The bankruptcy petition was filed on July 10, 1986, before the foreclosure by FBS had gone to non-judicial sale.

*In re Taddeo,* 685 F.2d 24 (2nd Cir.1982), apply § 1322(b)(3) and (b)(5), holds that a Chapter 13 debtor may cure a default of home mortgage under a Chapter 13 Plan by payment of arrearages, decelerate the delinquent note and mortgage and reinstate the monthly payment due under the note. Five circuits have decided along with *In re Taddeo* that a Chapter 13 debtor may cure the default by paying arrearages under the Plan and making the regular note payment so long as there has been no final judgment or sale on foreclosure. *Grubbs v. Houston First American S. & L. Ass'n,* 730 F.2d 236 (5th Cir.1984); *Federal Land Bank of Louisville v. Glenn,* 760 F.2d 1428 (6th Cir.1985); *Goldberg v. Tynan,* 773 F.2d 177 (7th Cir.1985); *In re Clark,* 738 F.2d 869 (7th Cir.1984) (Deceleration is "not a form of modification banned by (b)(2)" but rather is permissible and necessary concomitant of the power to cure default); *Foster Mortgage Corp. v. Terry,* 764 F.2d 1558 (11th Cir.1985) (arguably dicta). In the Ninth Circuit, the court has not yet been confronted with a similar issue, but has held that a Chapter 13 Plan cannot modify payments on a home mortgage which by its terms had matured before the filing of the bankruptcy petition. *In re Seidel,* 752 F.2d 1382 (9th Cir.1985). The Ninth Circuit specifically did not reach the issue decided in *In re Taddeo, Grubbs,* and *Clark. Id.* 1386, Ftn. 1. See also *In re Harlan,* 783 F.2d 839 (9th Cir.1986).[1] I also note that under the Deed of Trust, as provided by Montana law, the defaulted mortgagor may cure the default at any time before sale, and thus reinstate the mortgage, Section 71–1–312, MCA, although the issue in this case is governed by federal law.

■ However, the case law is also fully developed that the curing of a default under a Chapter 13 Plan is permissive, not mandatory, and must be accomplished within in a reasonable time. *In re Peterson,* 53 B.R. 339 (Bankr.Oreg.1985); *Central Federal Savings & Loan v. King;* 23 B.R. 779, 9 B.C.D. 976 (BAP 9th Cir.1982). In the present case, I find three years to cure the default is a reasonable time. See *Philadelphia Savings Fund Society v. Stewart,* 16 B.R. 460 (Bankr.E.D.Pa.1981) (40 months reasonable); *In re La Crue,* 33 B.R. 569 (Bankr.Colo.1983) (33 months reasonable); *Central Federal Sav. & Loan Assn. v. King,* 23 B.R. 779 (BAP 9th Cir.1982) (31 months reasonable). But see, *In re Miller,* 53 B.R. 100 (Bankr.S.D.Ohio 1985) (60 months unreasonable). Obviously no specific trend has developed as to what is a reasonable time, and the Court is left to confirm or reject this aspect of the Plan on a case-by-case basis.

The Debtors' value the residence at $115,000.00, but with a small equity, FBS claims a foreclosure sale, with attendant real estate sale costs, would probably not leave any equity in the collateral. The issue raised by FBS is that it is entitled to payment on interest on the arrearages, while the Debtors' Plan makes no provision for payment of interest. The case authorities are split on the issue. One of the latest case which summarizes the respective authorities is *In re Nesmith,* 57 B.R. 348, 349 (Bankr.E.D.Pa.1986), which states:

"We hold interest must be paid on the arrearges as mandated by § 1325(a)(5). *Cardinal Federal Savings & Loan Assoc. v. Colegrove (In Re Colegrove),* 771 F.2d 119 (6th Cir.1985). * * * Our conclusion is supported by the United States Court of Appeals for the Sixth Circuit in *Colegrove,* 771 F.2d 119, while debtor's contra position is bolstered by the Eleventh Circuit in *Foster Mortgage Corp. v. Terry (In Re Terry),* 764 F.2d 1558 (11th Cir.1985).[2]

---

**1.** The holdings of *Seidel* and *Harlan* have been criticized and rejected in *In re Spader,* 66 B.R. 618, 622 (D.C.W.D.Mo.1986).

**2.** The *Terry* case has been withdrawn from the permanent volume 764 F.2d on the basis that the decision is subject to a petition to reconsider. It is reported in 780 F.2d 894, 13 C.B.C.2d 121.

Our decision also draws succor from that line of cases which hold that the size of a secured lender's debt, including the debt owed to home mortgage lender, includes interest on arrearages, for purposes of deciding motion on relief from the automatic stay. *Grundy National Bank v. Tandem Mining Corp.*, 754 F.2d 1436 (4th Cir.1985); *In Re American Mariner Industries, Inc.*, 734 F.2d 426 (9th Cir. 1984). Today's decision is likewise in accord with prior decisions from this court, and with numerous decisions from our brethren on the bankruptcy bench. See e.g. *In Re Evans*, 20 B.R. 175 (Bankr.E.D.Pa.1982); *In Re Einspahr*, 30 B.R. 356 (Bankr.E.D.Pa.1983); *In Re Frey*, 34 B.R. 607 (Bankr.M.D.Pa.1983)."

The *Nesmith* decision also finds support from *In re Spader*, 66 B.R. 618 (D.C.W.D. Mo.1986); *Matter of Venech*, 67 B.R. 56 (Bankr.M.D.Fla.1986); *In re Thorne*, 34 B.R. 428 (Bankr.E.D.Tenn.1983); *In re Stratton*, 30 B.R. 44 (Bankr.W.D.Mich. 1983); *In re Wilkinson*, 33 B.R. 933 (Bankr.S.D.N.Y.1983); *In re Webb*, 29 B.R. 280 (Bankr.E.D.N.Y.1983); *In Re Fontaine*, 27 B.R. 614 (BAP 9th Cir.1982); *In re Hibbert*, 14 B.R. 891 (Bankr.E.D.N.Y. 1981). The rationale for each decision allowing interest on arrearages is that Section 506(b) of the Code allows an oversecured creditor interest on such claim, and any reasonable fees, costs or charges provided under the agreement, and Section 1325(a)(5)(B) (the cram-down provision) provides that a plan may be confirmed only where the secured creditor will receive the present value of its claim.

"Under the cram-down statute, the court determines the amount of the creditor's 'allowed secured claim' according to the value of the collateral. The plan must provide for interest on the allowed secured claim at a rate that will make the total paid over time equal to the 'present value' of the allowed secured claim. The contract does not control. The court sets the interest rate according to the prevailing market rates." *In re Thorne*, 34 B.R. at 431.

*In re Colegrove*, supra, also concluded that the most equitable rate to establish in this type of case under Chapter 13 is the prevailing market rate on similar type of loans at the time of allowance of the creditor's claim and the confirmation of the Plan with a maximum limitation on such rate to be the contract rate. *Id.* at 123.

 I conclude the better reasoned cases allow the payment of interest on arrearage where the secured creditor is oversecured, and the rate of interest should be fixed at the prevailing market rate. Since the Debtors' Plan does not provide for payment of interest, and there is no evidence in the record on present market rate of interest, the Plan must be rejected on condition the Debtors may amend the Plan to provide for payment of interest at the present market rate.

 On the other issue, feasibility, the evidence of the Debtor is that his employment prospects after termination of his present job are good, and will provide him with the same level of income he has received in the past. Further, the Debtor receives additional income from a business venture on a part-time basis which indicates he can satisfy the provisions of Section 1325(a)(6) of the Code, namely, "the Debtor will be able to make all payments under the Plan and to comply with the Plan". I note the amount of unsecured proofs of claim filed in this cause show only two creditors, totaling $346.07. The bar date for filing proofs of claim expired on November 25, 1986, (Bankruptcy Rule 3002), and therefore the payments of $200.00 per month for Trustee fees and payments to unsecured creditors will have been made in less than three months, thereby providing additional funds for the Plan. See *In re Street*, 55 B.R. 763, 766 (BAP 9th Cir.1985).

IT IS ORDERED the Debtors' Chapter 13 Plan is rejected upon condition the Debtors shall be allowed 15 days to amend the Plan to provide for payment of interest on the arrearages due FBS at the prevailing market rate of interest.