**In re Carlos Dale PARKER, Debtor.**

**Bankruptcy No. 90–13543–FM–13.**

United States Bankruptcy Court,
W.D. Texas,
Austin Division.

April 8, 1991.

Michael V. Baumer, Small, Craig & Werkenthin, P.C., Austin, Tex., for Dollar Dry Dock Sav. Bank.

Barry Broughton, Broughton & Kyser, P.C., Austin, Tex., for debtor, Carlos Dale Parker.

Ray Hendren, Austin, Tex., Chapter 13 Trustee.

MEMORANDUM OPINION ON OBJECTION OF DOLLAR DRY DOCK SAVINGS BANK TO DEBTOR'S SECOND MODIFIED (PRE–CONFIRMATION) CHAPTER 13 PLAN

FRANK R. MONROE, Bankruptcy Judge.

A hearing was held on February 28, 1991 on the Objection of Dollar Dry Dock Savings Bank to Debtor's Second Modified (Pre–Confirmation) Chapter 13 Plan.

This Court has jurisdiction of this case pursuant to 28 U.S.C. §§ 1334(b) and (d), 28 U.S.C. §§ 157(a) and (b)(1) and the standing Order of Reference existing in this District. This contested matter is a core proceeding under 28 U.S.C. §§ 157(b)(2)(B) and (L). This Memorandum Opinion constitutes the

Court's Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052.

## SETTING THE STAGE

On November 5, 1990, Carlos Dale Parker filed a voluntary petition under Chapter 13 of the Bankruptcy Code. The Debtor previously received a discharge in a Chapter 7 case, following conversion from Chapter 11. During the pendency of the prior case, the Debtor and Dollar Dry Dock Savings Bank ("Bank"), lienholder on the Debtor's residence, entered into an adequate protection agreement requiring Debtor to begin making the regular monthly payments due under the note on the residence and to fully pay all existing arrearage owed of approximately $43,000.00 on or before October 1, 1990. The Debtor failed to make the arrearage payment and filed this Chapter 13 case.

Confirmation of the Debtor's First Modified Chapter 13 Plan was denied on January 24, 1991 upon objections of the Bank and the Chapter 13 Trustee that good cause did not exist to allow plan payments over sixty months given that not all of the Debtor's disposable income was committed to the plan. The Court reserved its ruling on whether the Debtor must pay interest on the prepetition arrearage component of Bank's claim under 11 U.S.C. § 1325(a)(5)(B)(ii) pending amendment by the Debtor to cure the Plan's other defects.

Debtor proposed his Second Modified Chapter 13 Plan which still does not provide interest on the arrearage claim owed to Bank. Bank has objected to this treatment and has alleged that, if it is denied the right to foreclose its deed of trust lien by means of the automatic stay and the plan, it is entitled to postconfirmation interest on the mortgage arrearage under § 1325(a)(5)(B)(ii). The Debtor alleges that a requirement to pay interest will "rewrite" the contract and therefore be an impermissible modification of Bank's secured claim in violation of § 1322(b)(2).

## ISSUES

1) Must the Debtor's plan provide for interest to be paid on the Bank's secured claim for arrearage due under the Debtor's home mortgage under 11 U.S.C. § 1325(a)(5)(B)(ii)?

2) If interest must be paid, what is the correct rate of interest?

## DISCUSSION AND CONCLUSIONS OF LAW

■ 1. *Interest on Arrearage.* Given that the Fifth Circuit has not spoken on this issue, the Court must look elsewhere to determine whether the Bank is entitled to postconfirmation interest on its arrearage claim. Other courts have either allowed or disallowed interest depending on their interpretation of the interplay between 11 U.S.C. §§ 1322(b)(2) and (5) and 11 U.S.C. § 1325(a)(5)(B)(ii).

Sections 1322(b)(2) and (5) tell us how a plan *may* treat a debt secured only by a debtor's principal residence. They provide that a plan may:

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

11 U.S.C. §§ 1322(b)(2) and (5).

Subsection (b) of § 1322 lists the provisions that a plan may contain. However, § 1322(b)(2) prohibits modification of debts secured only by the debtor's principal residence. *See In re Seidel,* 752 F.2d 1382, 1383 (9th Cir.1985). This is a mandatory exception to an otherwise permissive laundry list of provisions that a plan may include to reorganize debts, and the Court cannot confirm a plan which tries to "modify" a home mortgage note over the objec-

tion of the holder thereof. *See* 11 U.S.C. § 1325(a)(1) (requiring a plan to comply with all provisions of the chapter and all other applicable provisions of Title 11). Section 1322(b)(5), on the other hand, allows curing of any default in any secured debt so long as the last payment thereon is due after the final plan payment.

Section 1325 sets forth the requirements a Chapter 13 plan *must* meet in order to be confirmed. If a secured claimholder has not accepted the plan, section 1325(a)(5)(B) requires that the secured creditor retain its lien securing the claim and that,

> "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim."

11 U.S.C. § 1325(a)(5)(B)(ii). This section embodies the time value of money concept; that is, a secured creditor must be compensated for being stayed from foreclosure and being required to receive payment of its claims over several years, which, absent the bankruptcy filing or its consent, would not occur. And further, as noted above, § 1325(a)(1) effectively incorporates the prohibition against modification of the home mortgage creditor's claim into the cramdown provisions.

These four subsections must all be read together and a result consistent with congressional intent fashioned. This will not necessarily be easy. On the one hand, literal application of the anti-modification provision of § 1322(b)(2) applicable to home mortgage debt, together with § 1325(a)(1), arguably prevents requiring a debtor to provide payment of interest on prepetition arrearages which are to be paid in deferred installments under the plan unless the contract between the parties so provides as it would be an impermissible modification of the underlying debt agreement. On the other hand, literal application of the mandatory plan confirmation standard set forth under § 1325(a)(5)(B), together with § 1322(b)(5), arguably requires interest to be paid on those same arrearages in order to provide the creditor with the present value of its claim as of the effective date of

the plan even though the contract does not so provide. It is little wonder that courts have had difficulty reconciling these provisions.

The only Fifth Circuit case bearing on the issue is *Grubbs v. Houston First American Savings Association*, 730 F.2d 236 (5th Cir.1984). In that case, the Court held that curing the arrearage amounts under a promissory note secured by the debtor's principal residence through installment payments under the plan was not a "modification" prohibited by § 1322(b)(2) even though the note had been accelerated and was fully due under state law as of the date the case was filed. *Id.* at 237. The court, citing the reasoning used by the Second Circuit [which at that time was the only circuit court which had decided the issue], stated that the

> "power to 'cure any default' granted in § 1322(b)(3) and (b)(5) is not limited by the ban against 'modifying' home mortgages in § 1322(b)(2) because we do not read 'curing defaults' under (b)(3) or 'curing defaults or maintaining payments' under (b)(5) to be *modifications* of claims."

*Id.* at 241 (citing *In re Taddeo*, 685 F.2d 24, 27 (2d Cir.1982) (emphasis in original).

Other courts have also allowed a home mortgage to be "cured" under § 1322(b)(5) by an appropriate repayment provision in a Chapter 13 plan when the original debt obligation extended beyond the termination date of the Chapter 13 plan. The ability to cure has not been considered an impermissible modification of the underlying agreement due to the construction given to the interplay of subsections (2), (3) and (5) of § 1322(b). *See In re Clark*, 738 F.2d 869, 872–74 (7th Cir.1984); *In re Terry*, 780 F.2d 894, 896 (11th Cir.1985) (consolidated opinion for *In re Terry, In re Bibbs*, and *In re E.Z. Carr* ); *Matter of Roach*, 824 F.2d 1370, 1374–77 (3d Cir.1987); *Appeal of Capps*, 836 F.2d 773, 775 (3d Cir.1987).

These same courts, however, have disallowed interest on mortgage arrearage reasoning that, absent a provision in the note authorizing same, the payment of present value interest would be an impermissible

modification of the note. *In re Laguna*, 114 B.R. 214, 218 (9th BAP 1990); *In re Terry*, 780 F.2d at 896; *In re Brown*, 91 B.R. 19, 22 (Bankr.E.D.Va.1988). The specific and favorable treatment of home mortgage debt provided for by § 1322(b)(2) means that a Chapter 13 plan cannot modify the debt terms, except to cure any arrearage as allowed by § 1322(b)(5). *In re Kooker*, 106 B.R. 233, 235–36 (Bankr.D. Nev.1989). Even without the additional interest, the creditor will receive all amounts bargained for. Accordingly, there is no need to provide this class of creditors with any additional payments. *Appeal of Capps*, 836 F.2d at 776–77.

Further, since § 1325(b)(5) is a "cramdown" provision, it has been held to apply only to claims which are *modified* under the plan. Therefore, it cannot be applied to home mortgage debts since they cannot be modified under § 1322(b)(2), and interest is not required under §. 1325(a)(5)(B)(ii) in order to provide this class of creditor with the present value of its claim. *See Landmark Financial Services v. Hall*, 918 F.2d 1150, 1154 (4th Cir.1990); *Appeal of Capps*, 836 F.2d at 776; *In re Kooker*, 106 B.R. at 236; *In re Stamper*, 84 B.R. 519, 522 (Bankr.N.D.Ill.1988).

Plus, the Eleventh Circuit in *Terry* concluded that "[t]he legislative history indicates that section 1322(b) was intended to create a special exception to section 1325(a)(5)(B)." *In re Terry*, 780 F.2d at 896–97. As such, the requirement to provide a secured creditor the present value of its claim through § 1325(a)(5)(B)(ii) interest is unavailable to home mortgage creditors. *Id.* at 897. However, another court did not perceive this legislative intent and noted "[t]he Code nowhere provides that § 1322(b) is a 'special exception' to § 1325(a)(5)(B)." *In re Small*, 65 B.R. 686, 692 (Bankr.E.D.Pa.1986).

Contrary results have been reached on the grounds that payment of interest is merely incident to the cure, interest must be paid in order to compensate the creditor for the delay in receiving payment, and/or interest is required when the creditor is oversecured.

The leading opinion is *In re Colegrove*, 771 F.2d 119 (6th Cir.1985). In that case, as here, there was no provision in the underlying agreement for the payment of interest on arrearage amounts. The Court concluded that "section 1322(b)(2) prevents a modification of the loan agreement only under certain conditions, while section 1322(b)(5) allows for a 'cure' of the arrearage 'notwithstanding paragraph (2).'" *Id.* at 122. Accordingly, requiring interest to be paid on the arrearage under § 1325(a) does not modify the underlying agreement as "the interest requirement is merely incident to the 'cure', which is excepted from the rule of section 1322(b)(2)." *Id.* The Court also reasoned that since it had previously allowed an unsecured creditor to receive interest on its claim under § 1325, it would be inequitable to apply § 1322 so as to deny a secured creditor this present value interest. *Id.* The dissenting judge argued that the payment of interest was a modification of the debt, that § 506(b) and § 1325 do not apply to debts secured by the debtor's principal residence, and that Congress, in enacting §§ 1322(b)(2) and (5), intended for the contract between the parties to govern the amounts paid should an arrearage occur. *Id.* at 123–25.

Other courts have concluded that the payment of § 1325(a)(5)(B) interest is to compensate the creditor for the delay in receiving his claim amount over time; i.e., the interest must equate the total of the deferred payments to the value of the claim if received today. *In re Webb*, 29 B.R. 280, 286 (Bankr.E.D.N.Y.1983); *In re Thomas*, 115 B.R. 305, 307 (Bankr.E.D.Okla.1990); *In re Trigwell*, 67 B.R. 808, 810 (Bankr.C. D.Cal.1986) [possibly reversed by the ruling *In re Laguna*, 114 B.R. at 217–18]. Some courts have allowed interest under § 1325(a)(5)(B) only when the creditor is oversecured, *see In re Van Gordon*, 69 B.R. 545, 547 (Bankr.D.Mont.1987), while others have allowed interest regardless of the collateral's value, *see In re Catlin*, 81 B.R. 522, 524 (Bankr.D.Minn.1987).

After studying the opinions set forth above, this Court believes that allowing interest on arrearage under

§ 1325(a)(5)(B)(ii) is the appropriate result. The Court disagrees with the cases holding that creditors cannot obtain compensation for the delay in receiving the arrearage over time when the note does not so provide under the rationale that they will receive their entire claim without it under the mandate of § 1322(b)(2). If, in fact, §§ 1322(b)(2) and (5) are applied to deny interest to home mortgage creditors on their arrearage claims, they will not receive the same benefits that non-home mortgage creditors will receive under those same sections. Clearly, that is not the result Congress intended when it put the anti-modification language into § 1322(b)(2). See the legislative history for § 1322(b) at H.R. Rep. No. 95–595, 95th Cong., 1st Sess. 429 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 141 (1978) U.S.Code Cong. & Admin. News 1978, p. 5787; 124 Cong.Rec. H11,-1106 (daily ed. Sept. 28, 1978); 124 Cong. Rec. S17,423 (daily ed. Oct. 6, 1978) and the legislative history for § 1325 at H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 430 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 142 (1978); 124 Cong.Rec. H11,107 (daily ed. Sept. 28, 1978); 124 Cong.Rec. S17,423 (daily ed. Oct. 6, 1978).

Further, cure of a home mortgage note under § 1322(b)(5) has been determined by the Fifth Circuit *not* to be a modification prohibited by § 1322(b)(2). This Court should read § 1325(a) consistent with that interpretation. If curing arrearage in a manner *not* provided for in the home mortgage note [in installments] is not a modification prohibited by § 1322(b)(2), then application of the standards imposed by § 1325(a)(5)(B)(ii) upon the Debtor in his attempt to "cram down" the method of cure thereof upon the dissenting home mortgage creditor should likewise *not* be a modification prohibited by § 1322(b)(2). It should, therefore, be interpreted as being "incident to the 'cure.' " *In re Colegrove*, 771 F.2d at 122. Also, unless interest on the arrearage is paid, home mortgage creditors will not receive the same benefit of their bargain that they would receive if no bankruptcy was filed. *In re Spader*, 66 B.R. 618, 623 (W.D.Mo.1986). This is because if the creditor is both prohibited from

pursuing its foreclosure rights (by operation of the automatic stay imposed first by § 362 and then by the confirmed plan) and forced to accept payment of the arrearage in installment payments over time without interest [something it would not be forced to do *absent bankruptcy*], it will not receive the same dollar value for its claim had foreclosure occurred, the asset sold, and the sales proceeds invested. Plus, such a result would, in itself, technically be a "modification" without any adequate protection being provided. The time value of money is not irrelevant as concluded by the courts in the *Appeal of Capps, Landmark Financial, Kooker*, et al. It is, in fact, required by the mandatory language of § 1325(a)(5)(B)(ii).

The Court concludes that the arrearage amounts paid through a Chapter 13 plan should bear interest in order to provide the creditor with a value, as of the effective date of the plan, which equates to the present value of that claim.

■ 2. *Rate of Interest Required.* "[T]he Court, independently of the contract, must fix an interest factor such that the total of such deferred payments is equivalent to the receipt of the total claim today." *In re Webb*, 29 B.R. at 286. There is no clear cut view of the correct rate to apply as the decisions of other courts reflect that varying rates have been allowed.

Some courts have determined that the contract rate is the most appropriate rate on the theory that any other rate would modify the original contract. *See In re Stratton*, 30 B.R. 44, 46 (Bankr.W.D.Mich. 1983); *In re Thorne*, 34 B.R. 428, 431 (Bankr.E.D.Tenn.1983). Other courts have applied the contract rate on the theory that " 'the contract rate is the rate which the parties agreed was a fair return to the creditor for the debtor's repayment of the loan over an extended period of time.' " *In re Minick*, 63 B.R. 440, 477 (Bankr.D.Colo. 1986) (quoting *In re Evans*, 20 B.R. 175, 177 (Bankr.E.D.Pa.1982)).

Other courts have concluded that the contract rate is irrelevant in light of the present value concept underlying

§ 1325(a)(5)(B); therefore, a market rate is dictated to provide such compensation. *See In re Trigwell,* 67 B.R. at 810 (allowed interest at the rate the creditor charged on similar home loans at the time of plan confirmation); *In re Gincastro,* 48 B.R. 662, 666 (Bankr.D.R.I.1985) (interest allowed at rate the creditor could earn if it received the cash equivalent of its claim on the plan's effective date); *In re Van Gordon,* 69 B.R. at 547 (prevailing market rate allowed); *In re Wilkinson,* 33 B.R. 933, 936–37 (Bankr.S.D.N.Y.1983) (market rate of interest allowed which reflected the delay in payment, such as the rate for a five year treasury bond or note, and which incorporated the risk of non-payment); *In re Paul,* 62 B.R. 269, 271 (Bankr.D.Neb.1986) (prevailing market rate allowed for a loan with a similar duration, quality of security and risk of non-payment).

Finally, other courts have applied a hybrid of the two rates, allowing the creditor the lower of the market or contract rate, with the contract rate being the maximum rate allowed. *See In re Colegrove,* 771 F.2d at 123; *In re LaLonde,* 65 B.R. 237, 241 (Bankr.S.D.Ohio 1986).

The Court concludes that a market rate of interest for similar types of investment vehicles, i.e., rates offered for investments with comparable risk and liquidity factors and of a like duration, is the proper interest rate necessary to provide a home mortgage creditor with the present value of its claim in line with the legislative history. No evidence was presented at the hearing to establish what a proper interest rate would be in this case. Unless the parties can agree, and since the Debtor will be required to amend his plan in line with the Court's ruling, the Court will reserve ruling on the appropriate interest rate to be applied until the issue has been properly developed on the facts.

## CONCLUSION

Section 1322(b)(2) does not pre-empt the plan confirmation requirements set forth in § 1325(a)(5)(B). The Debtor's plan must comply with the mandatory requirement of § 1325(a)(5)(B)(ii) in that it must provide the Bank with the present value of its arrearage claim as of the effective date of the plan. It must, therefore, pay interest at a market rate on the arrearage amount until the arrearage is repaid. The Debtor's Second Modified Plan shall be denied confirmation without prejudice to it being timely amended to include a provision providing interest on the Bank's arrearage claim at a market rate.

A separate order of even date herewith will be entered by the Court.