**In re Donald Ray GADLEN and Brenda Joyce Gadlen, Debtors.**

**Bankruptcy No. 89–11209–B.**

United States Bankruptcy Court, W.D. Tennessee, E.D.

Feb. 1, 1990.

David H. Jones, Memphis, Tenn., for Leader Federal Bank for Sav.

Lloyd A. Utley, Jackson, Tenn., for debtors.

Ernie H. Gray, Jackson, Tenn., George Stevenson, and George Emerson, Memphis, Tenn., Chapter 13 Trustees.

MEMORANDUM OPINION AND ORDER ON DEBTORS' MOTION TO IN-CLUDE HOME MORTGAGE, ON LEADER FEDERAL'S MOTION TO DISMISS OR OBTAIN RELIEF FROM THE AUTOMATIC STAY AND ON LEADER FEDERAL'S OBJEC-TION TO DEBTORS' MOTION TO ADD THE HOME MORTGAGE

WILLIAM H. BROWN, Bankruptcy Judge.

The debtors filed their Chapter 13 case on July 24, 1989, and their Chapter 13 statement indicates that this is their first bankruptcy filing. The statement also schedules Leader Federal Bank for Savings (hereinafter "Leader Federal") as being the holder of a first mortgage lien on the debtors' residence. The original plan filed by the debtors showed no arrearage to Leader Federal and provided that Leader Federal would be paid directly by the debtors. The Chapter 13 plan was confirmed, with the direct payment provisions as to Leader Federal, on September 6, 1989. On October 30, 1989, the debtors filed their motion to include the ongoing mortgage payment in the Chapter 13 plan and to add $1,920.00 in postpetition arrearages at 10% interest and at $48.00 per month in the plan. On November 3, 1989, Leader Federal filed its motion to dismiss and/or obtain relief from the automatic stay, saying that the debtors were in default for August, September and October, 1989, in an amount of $486.20 per month plus late charges and attorney's fees. This motion sought dismissal under § 1307(c)(6) of the Bankruptcy Code. On November 14, 1989, Leader Federal also filed its written objection to the debtors' motion to add this creditor to the Chapter 13 plan.

## ISSUES PRESENTED

The issues presented in this contested matter are whether the debtors may accomplish a postconfirmation modification, when that modification amounts to the adding of plan payments to a creditor secured by a first mortgage on the debtors' principal residence, which modification also includes the adding of postpetition mortgage arrearages, said modifications being over the objection of the secured creditor. The issues raise interpretations of § 1322 and § 1329 of the Bankruptcy Code and present core issues under 28 U.S.C. § 157(b)(2)(L). The following constitutes findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

## BANKRUPTCY CODE

Applicable portions of § 1322 provide as follows:

(b) Subject to subsections (a) and (c) of this section, the plan may—

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

(3) provide for the curing or waiving of any defaults;

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

The Code provisions concerning postconfirmation modification are found in § 1329, which provides as follows:

§ 1329. Modification of plan after confirmation.

(a) At any time after confirmation of the plan, but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments; or

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan, to the extent necessary to take account of any payment of such claim other than under the plan.

(b)(1) Sections 1322(a), 1322(b) and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.

(2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.

(c) A plan modified under this section may not provide for payments over a period that expires after three years after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period, but the court may not approve a period that expires after five years after such time.

### FINDINGS AND CONCLUSIONS

■ The Court notes that this same creditor objected to a postconfirmation modification of a Chapter 13 plan, in a similar setting, in the case of *In re Walter Davis and Jimmye Davis*, 110 B.R. 834 (Bankr.W.D.Tenn.1989). In that case, Leader Federal's objection apparently was primarily based upon its claim that § 1322(b)(2) statutorily prohibited such postconfirmation modifications. Chief Judge David S. Kennedy overruled the creditor's objection in a written opinion, supplementing oral findings and conclusions, which written opinion this Court finds persuasive and adopts verbatim. In that opinion, Judge Kennedy quoted from *In re McCollum*, 76 B.R. 797 (Bankr.Ore.1987), which Court found that § 1322(b)(2) did not preclude a debtor's amendment to a Chapter 13 plan when the amendment cured postpetition and postconfirmation defaults in payments secured only by the Chapter 13 debtor's principal residence. As the *McCollum* Court noted, Chapter 13 has a goal of rehabilitating debtors while protecting creditors' interest, and § 1329, in its provision for modifications of confirmed plans, does not deviate from that goal in its recognition that changed circumstances may require modification. 76 B.R. at 800.

■ This Court has previously recognized, in its own unpublished opinion, that § 1329 permits postconfirmation modification, and this Court had indicated that it would require strict compliance with § 1329 in that all affected creditors must be noticed. *See, In re Lynch* and *In re Woods*, 109 B.R. 792 (Bankr.W.D.Tenn. 1989). In that opinion, this Court observed that "the incurring of postpetition mortgage arrearages may present difficult problems for debtors and mortgage creditors as to whether those postpetition arrearages constitute a modification of the home mortgages in violation of § 1322(b)(2) or in violation of the requirements of § 1322(b)(5) that ongoing mortgage payments be maintained 'while the case is pending.'" *In re Lynch and Woods*, at p. 796. It is certainly true that in a given case, a debtor's attempted postconfirmation modification may not be justified as a change of circumstance but may instead be

344

an attempt by the debtor to avoid the anti-modification provisions of § 1322(b)(2), and the bankruptcy court must conduct a judicial inquiry in each case to ascertain the real purpose behind an attempted postconfirmation modification.

■ As the *McCollum* Court observed, the inclusion of a plan modification provision curing postpetition defaults does not necessarily constitute a modification of the creditor's rights in contravention of § 1322(b)(2). As in *McCollum*, these debtors' modification does not alter the term of the original trust deed as to payment of future installments. *In re McCollum*, 76 B.R. at 800–801. If, on the other hand, a debtor attempted to modify basic terms of the original mortgage deed of trust, through a postconfirmation modification, § 1322(b)(2) would likely be offended and such a modification attempt should be rejected.

■ Here, the Court has examined the proof presented and finds that there was a change of circumstance in that the debtor, Mr. Gadlen, who has owned this home since 1984, and who has seen its market value rise to $50,000.00, according to his testimony, suffered personal and family problems causing financial difficulties around the time of the bankruptcy filing and thereafter. Mr. Gadlen has steady employment, having been with the same employer for eleven years, and the debtor. Mrs. Gadlen is also employed. Mr. Gadlen has suffered, however, a pay cut during the fall after his bankruptcy filing. A sufficient change in circumstance has been presented to explain why the debtors have become delinquent, postpetition, in their mortgage payments. This is not to excuse the delinquency nor to say that the debtors may in the future freely fall behind in their mortgage payments, since a pattern of delinquency in the mortgage payments would violate the requirements of § 1322(b)(5) that ongoing payments be maintained "while the case is pending."

■ It may be argued that § 1329 does not permit modification in this instance because the provisions of § 1329 do not specifically address the adding of a mortgage obligation to the plan payments or the adding of the mortgage arrearage. Section 1329(a)(1) provides that payments to a "particular class provided for by the plan" may be modified. The Court finds and concludes that Leader Federal was provided for by this plan, in that the original plan, as confirmed, contained a provision that the ongoing payments to Leader Federal would be paid directly by the debtors. It is not necessary that a creditor be paid by the Chapter 13 trustee in order to be provided for by the plan. *See, e.g., In re Wright*, 82 B.R. 422 (Bankr.W.D.Va.1988). Leader Federal, having been provided for by this plan in the form of direct payments by the debtor, is now subject to modification in that the debtor seeks to alter the plan and now provide that payments be made by the Chapter 13 trustee, both as to ongoing payments and as to postpetition arrearages.

■ Section 1322(b)(5) does permit, as an exception to § 1322(b)(2), that defaults may be cured "within a reasonable time." Leader Federal argues that this Code provision is limited to prepetition arrearages. However, the Code is not so limited in its language. *In re Walter Davis and Jimmye Davis*, unpub. opinion *supra* at p. 5. Also, § 1322(b)(3) permits the curing of *any* default. That Code provision has been interpreted to permit curing within the life of the plan. *In re Ford*, 84 B.R. 40, 43–44 (Bankr.E.D.Pa.1988). The *Ford* Court recognized that some courts had placed certain limits on the debtor's ability to cure postpetition defaults either under § 1322(b)(3) or (5). For example: (1) A debt already matured prior to filing *may* not be cured. *See, e.g., In re Seidel*, 752 F.2d 1382 (9th Cir.1985). (2) Suspension of all payments in the plan in order to permit a curing has been frowned upon. *See, e.g., In re Gavia*, 24 B.R. 573 (9th Cir. BAP 1982). (3) An unreasonable period of time to cure postpetition arrearages would offend § 1322(b)(5) as would excessive delays in making consistent payments. *See, e.g., In re Parker*, 46 B.R. 106 (Bankr.N.D.Ga. 1985). (4) At least one court has held that confirmation, by virtue of § 1327, revested

the property in the debtor, created a new mortgage obligation, and precluded the automatic stay from having any effect on postpetition arrearages. *See, In re Nicholson*, 70 B.R. 398 (Bankr.D.Col.1987). (Both the *Ford* Court and this Court disagree with the *Nicholson* rationale).

■ This Court is aware that some courts have held that the debtor may not utilize § 1329 to modify the plan so as to cure postpetition arrearages. *See, e.g., In re Hollis*, 105 B.R. 1003 (N.D.Ala.1989) (mortgagee filed motion for relief from stay, debtor failed to respond and no § 1329 modification was sought); *In re Cotton*, 102 B.R. 891 (Bankr.D.Ga.1989) (debtor assumed mortgage postconfirmation); *In re Sensabaugh*, 88 B.R. 95 (Bankr.E.D.Va.1988) (material breach dictated dismissal under § 1307(c)(6)). However, after an examination of these opinions, this Court finds that their facts differ from the Gadlen facts, and this Court is not persuaded that a blanket rule prohibiting postconfirmation modification for the purpose of curing postpetition mortgage arrearages is either mandated or wise. The critics of such modification appear to find § 1322(b)(2) and (5) controlling, and this Court does not quarrel with the effect of those statutes. However, those statutes do not prohibit, by their clear language, a postconfirmation modification of this nature. They, coupled with § 1329, simply require the court to examine any postconfirmation modification to be certain that it complies with both § 1322(a) and § 1322(b), as well as § 1323(c) and § 1325(a). This Court has conducted such an examination and finds that the modification sought by the Gadlens does comply with the applicable Code sections.

However, the Court notes that the modification sought by the Gadlens proposes to add an arrearage of $1,920.00, at $48.00 per month and at 10% interest. Testimony at the hearing indicated that the debtors were now delinquent from August through November, 1989; therefore, the postpetition arrearage will be higher than indicated by the debtors. The plan, as confirmed by the Court, is a sixty month plan, beginning on the date of confirmation, September 6, 1989. There was no proof presented of the contractual rate of interest nor of a market rate of interest for similar loans. Therefore, the Court can only conclude that these debtors must pay the postpetition arrearage at the contractual rate, whatever it may be, pursuant to the promissory note between the debtors and Leader Federal, or at 10%, as proposed by the debtors, whichever rate is higher. *In re Colegrove*, 771 F.2d 119 (6th Cir.1985). The Court will not at this time pass upon the $48.00 per month payment proposed by the debtors; rather, the Court will hear further proof on the length of term necessary for payment of the postpetition arrearage, if the parties are unable to agree upon a satisfactory term. Insufficient proof was presented for the Court to make a determination of whether the $48.00 per month would pay out over a reasonable time, as required by § 1322(b)(5).

The creditor is protected in part in this case by the fact that the payments, to be made now through the Chapter 13 trustee, are from a payroll deduction. The Court had ordered, after oral hearing on November 29, 1989, that the debtors begin to pay their proposed mortgage arrearage at the $48.00 per month to the Chapter 13 trustee; therefore, some payments should have accumulated for immediate disbursement to the creditor, along with the ongoing mortgage payments now being paid through the plan. Should the debtors default in future plan payments, so that additional postmodification arrearages accumulate, the creditor is free to move the court for appropriate relief, which would trigger another examination of § 1322(b)(5) and § 1307(c). However, at this time, the Court finds that the debtors' modification, so as to cure postpetition arrearages and make ongoing mortgage payments, overcomes the creditor's request for dismissal under § 1307(c)(6).

## CONCLUSION

The debtors' motion to modify their confirmed Chapter 13 plan so as to add ongoing mortgage payments to Leader Federal

Bank for Savings to the plan to be disbursed by the Chapter 13 trustee should be granted, and the debtors' motion to add postpetition arrearages should be granted, with the creditor having the right to file a claim for its postpetition arrearages which postpetition arrearages shall be paid at the contractual rate or at 10% proposed by the debtor, whichever interest rate is higher.

The Court reserves, for later determination, the term of payment of the postconfirmation arrearage, to allow the parties to consult to see if they may agree. However, the Court notes that the United States Bankruptcy Court for the Western District of Tennessee, through its Chief Judge, and the United States District Court for the Western District of Tennessee, in an affirmation of the Bankruptcy Court, has recognized authority for permitting Chapter 13 debtors to modify confirmed plans in order to pay off postconfirmation arrearages over the term of the plan. *See, In re Lois J. Bailey*, 111 B.R. 151, unpub. opinion case no. 83–20623–K (Bankr.W.D. Tenn. Dec. 23, 1986), *aff'd*, unpub. opinion 87–2042–4A (W.D.Tenn., Judge Robert M. McRae, August 26, 1988).

The objection to the debtors' modification is denied for the reasons stated hereinabove and the motion to dismiss or obtain relief from the automatic stay filed by Leader Federal is denied.

Leader Federal may file, as a part of its arrearage claim, a claim for attorney's fees. *See*, 11 U.S.C. § 506(b). Of course, the debtors or Chapter 13 trustee may object to the proof of claim. *See* Bankruptcy Rule 3007.

SO ORDERED.