**In re Alberto CHAVEZ and Erena Chavez, Debtors.**

**Bankruptcy No. 90–10994–BKC–AJC.**

United States Bankruptcy Court,
S.D. Florida,
Miami Division.

June 12, 1990.

See also, Bkrtcy., 117 B.R. 733.

Jordan E. Bublick, Miami, Fla., for debtors.

Robert L. Roth, Miami, Fla., Chapter 13 Standing Trustee.

Craig V. Rasile, Shea & Gould, Miami, Fla., for Crossland Mortg. Corp.

## MEMORANDUM DECISION AND ORDER OVERRULING CROSSLAND MORTGAGE CORPORATION'S OBJECTIONS TO CONFIRMATION OF DEBTORS' CHAPTER 13 PLAN

A. JAY CRISTOL, Bankruptcy Judge.

Crossland Mortgage Corporation's Objections to Confirmation of Debtors' Chapter 13 Plan came before the Court on April 10, 1990 at the hearing on confirmation of the debtors' first amended Chapter 13 plan. The debtors and counsel for the debtors, counsel for Crossland Mortgage Corporation, and the standing Chapter 13 Trustee appeared.

### FINDINGS OF FACT

The debtors and their two children reside in Hialeah, Florida. Their home, which has an approximate value of $49,500.00 (according the appraisal submitted by Crossland Mortgage Corporation at the hearing on relief from stay), is subject to a first mortgage with an approximate balance due of $60,000.00 in favor of Crossland Mortgage Corporation ("Crossland"), who is the servicing agent for TransOhio Savings Bank ("TransOhio"). The debtors defaulted on their obligation to TransOhio and TransOhio filed a foreclosure action on January

31, 1990 in the Circuit Court in Dade County, Florida. On February 15, 1990, the debtors filed a petition for relief under Chapter 13 staying the foreclosure action. The schedules submitted by the debtors list this secured creditor as well as the involved condominium association, which may have a lien for condominium maintenance fees and Ford Motor Credit Co., which holds a lien on the debtors' vehicle. One unsecured creditor is listed in the amount of $1,600.00. The debtors owe an arrearage of about $6,100.08 on TransOhio's mortgage.

The debtors' first amended Chapter 13 plan proposes, *inter alia*, to cure the arrearage to TransOhio over a period of 36 months while maintaining current payments. The proposed length of the plan itself is 60 months, with the last 24 months providing for a distribution to unsecured creditors. The total monthly payment by the debtors to the Chapter 13 trustee for the first 36 months of their proposed plan is $798.03.

The debtor/husband has been employed as a plumber for about a year and a half and the debtor/wife has been employed as a school library clerk for the last 6 years. The debtors' budget and schedules indicate an estimated future monthly income of $2,166.66 and total estimated future monthly expenses of $1,284.00, leaving a net available income of $882.66. The proposed monthly payment under their Chapter 13 plan is about 88% of their available net income.

The argument presented by the Chapter 13 Trustee and counsel for the debtors, indicates that the reason for the mortgage arrearage is that the debtor/husband suffered a serious medical problem and was unemployed.

1. The Bankruptcy Code's legislative history does not provide any guidance on this question. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 429 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 141 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5927, 6384. *In re: Hickson*, 52 B.R. 11 (Bankr.S.D.Fla.1985); *Dockery, supra,* at 97.

## ISSUE

Crossland's primary objection (acting as servicing agent for TransOhio) to the confirmation of the debtors' Chapter 13 plan is that 36 months is not a "reasonable time" within the meaning of 11 U.S.C. Section 1322(b)(5) for the debtors to cure the mortgage arrearage.

## CONCLUSIONS OF LAW

Crossland contends that the proposal by the debtors to cure their mortgage arrearage within a period of 36 months is not a "reasonable time" under 11 U.S.C. Section 1322(b)(5).

The task of resolving the dispute over the meaning of what may constitute a "reasonable time" pursuant to 11 U.S.C. Section 1322(b)(5) begins where all such inquiries must begin: with the language of the statute itself. *U.S. v. Ron Pair Enterprises*, 489 U.S. 235, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). The literal language of Section 1322(b)(5) itself does not in any way define, set or limit the length of time that may constitute a "reasonable time." If Congress had intended to limit the length of time, it could have done so.[1] It did not. *In re: Ivory*, 32 B.R. 788, 792 (Bank.D.Or. 1983). This Court is without authority to enter the legislative domain and write into the Bankruptcy Code any specific time limitation that is not clearly set forth by the Congress of the United States. *In re: Dockery*, 34 B.R. 95, 98 (Bankr.E.D.Mich.S. D.1983). *See also, In re: Saylors*, 869 F.2d 1434, 1436 (11th Cir.1989).[2] Indeed, the Courts hold that such length of time is subject only to the maximum plan repayment periods of three or five years as set forth in the 11 U.S.C. 1322(c). *In re: Harmon*, 72 B.R. 458, 462 (Bankr.E.D.Pa.1987).

The cases uniformly hold that a "reasonable time" under 11 U.S.C. Section

2. *But see, In re: Hailey*, 17 B.R. 167 (Bankr.S.D. Fla.1982) and *In re: Mitchell*, 27 B.R. 288 (Bankr.S.D.Fla.1983) where the Court suggests a maximum period of 12 months. One Court specifically rejected a reading of *Hailey* that would seem to suggest the setting of a "national standard of a mandatory maximum of twelve months for curing pre-petition arrearages". *Dockery, supra,* at 98.

1322(b)(5) is a flexible concept and that whether a plan's proposal to cure an arrearage is reasonable must be determined on a case-by-case basis and under the facts and equities of each case, such determination being within the sound discretion of the court. *In re: King*, 23 B.R. 779, 781 (9th Cir.BAP 1982); *In re: Van Gordon*, 69 B.R. 545, 546 (Bankr.D.Mont.1987); *Ivory, supra*, at 792; *In re: Lynch*, 12 B.R. 533, 536 (Bankr.W.D.Wis.1981) This determination will not be upset on appeal unless clearly erroneous. *Grundy National Bank v. Stiltner*, 58 B.R. 593, 596 (W.D. Va.1986). Chapter 13 plans providing for the curing of mortgage arrearages on a debtors' principal residence have been approved by courts for various periods of time up to the maximum of 60 months.[3] This Court routinely confirms chapter 13 plans providing for curing of mortgage defaults over a period of 36 months and will, in appropriate circumstances, confirm chapter 13 plans providing for curing of mortgage defaults over a period of up to 60 months.

In addition to the literal language of 11 U.S.C. Section 1322(b)(5), which itself does not place any time limitations, the above advances the rehabilitative purpose of Chapter 13 as evidenced in the legislative history. Chapter 13 was intended to give debtors with regular income the opportunity to reorganize their debts in order to retain their assets, including their home, while at the same time repaying their debts in accordance with a court approved plan. *Ivory, supra*, at 792. Indeed, one of the primary purposes of Chapter 13 rehabilitation is to save homesteads. *In re: Young*, 22 B.R. 620, 622 (Bankr.N.D.Ill.1982).

In addition, Congress intended that Chapter 13 plans have a minimum of mandatory provisions so that flexible repayment plans could be formulated to enable debtors to protect their assets. H.R.Rep. No. 595, 95th Cong. 1st Sess. 117–18 (1977); S.Rep. No. 989, 95th Cong. 2nd Sess. 141 (1978). *Dockery, supra*, at 97, *In re: Wiggins*, 21 B.R. 532 (Bankr.D.S.C.1982). Congress enacted Chapter 13 to "provide a highly desirable method for dealing with the financial difficulties of individuals. It creates an equitable and feasible way for honest and conscientious debtors to pay off their debts rather than having them discharged in bankruptcy." H.R.Rep. No. 1983, 86th Cong., 1st Sess. 2 (1959), *quoted in Perry v. Commerce Loan Co.*, 383 U.S. 392, 396, 86 S.Ct. 852, 15 L.Ed.2d 827 (1966) and in *Saylors, supra*, at 1436.

The factors to be considered by the Court in making its case-by-case determination should include: (1) the nature and repayment period of the original obligation, (2) the nature of the property held as security, (3) debtors' payment record, (4) the amount and reason for the arrearage, (5) the availability of the debtors' discretionary income to cure the default, (6) the ability of the debtors to meet the obligations of their plan and to continue current payments on their installment obligations, (7) whether the debtors are putting forth their best effort to cure the default, and (8) the necessity of the asset to an effective rehabilitation of the debtors. *Hickson*, 52 B.R. 11 (Bankr.S.D.Fla.1985); *Lynch, supra*, at 536 (Bankr.W.D.Wis.

---

3. *In re: Capps*, 836 F.2d 773 (3rd Cir.1987) (60 months reasonable); *In re: King*, 23 B.R. 779, 781 (9th Cir.BAP 1982) (31 months reasonable); *Grundy National Bank v. Stiltner*, 58 B.R. 593, 596 (W.D.Va.1986) (36 months reasonable); *In re: Hickson*, 52 B.R. 11 (Bankr.S.D.Fla.1985) (25 months reasonable); *In re: Harmon*, 72 B.R. 458 (Bankr.E.D.Pa.1987) (60 months reasonable); *In re: Lynch*, 12 B.R. 533 (Bankr.W.D. Wis.1981) (36 months reasonable); *In re: Sapp*, 11 B.R. 188 (Bankr.S.D.Ohio 1981) (24 months reasonable); *In re: Beckman*, 9 B.R. 193 (Bankr.N.D.Iowa 1981) (30 months reasonable); *In re: Anderson*, 73 B.R. 993 (Bankr.W.D.Okla. 1987) (17 months reasonable); *In re: Lapp*, 66 B.R. 67 (Bankr.D.Colo.1986) (24 months reasonable); *In re: Smith*, 19 B.R. 592 (Bankr.N.D.Ga. 1982) (14 months reasonable); *In re: Soderlund*, 7 B.R. 44 (Bankr.S.D.Ohio 1980) (18 months reasonable); *In re: Van Gordon*, 69 B.R. 545 (Bankr.D.Mont.1987) (36 months reasonable). *See also, Saylors*, 869 F.2d 1434 (11th Cir.1989) (approx. 32 month cure, affirmed on other grounds). *See generally*, Annot., "Reasonableness of Chapter 13 Plan, Under 1978 Bankruptcy Code (11 U.S.C. Section 1322(b)(5)), in Terms of Length of Time Proposed for Cure of Prepetition Default in Payments to Creditor", 63 A.L.R. Fed. 309 (1983).

1981); *In re: Acevedo,* 9 B.R. 852, 854 (Bankr.E.D.N.Y.1981); *In re: King,* 7 B.R. 110, 112 (Bankr.S.D.Cal.1980); *In re: Pollasky,* 7 B.R. 770, 771 (Bankr.D.Colo.1980).

 In the instant case, the involved mortgage proposed to be cured is a long-term obligation held by an institutional lender. The proposal to cure the default over a period of 36 months does not drastically alter the contractual expectations of the parties. This mortgage is secured by the principal residence of the debtors and their children. Prior to this default, debtors had been making payments for a substantial period. The arrearage accrued because the debtor/husband suffered a serious medical problem and was unemployed. These were circumstances beyond the control of the debtors. The debtors' estimated monthly income is $2,166.66 and their estimated monthly expenses are $1,284.00, leaving a net available income of $882.66. The debtors' first amended Chapter 13 plan provides that the monthly payment for the first 36 months is $798.03. The debtors' discretionary income is sufficient to cure the default. The debtors have the ability to meet the obligations of the proposed plan during the last 24 months of the plan as well as continue current payments on this installment obligation directly to Crossland. The debtors are applying substantially all of their available income to the curing of the arrearage on Crossland's mortgage and are putting forth their best effort. The debtors' primary residence is, of course, an asset essential to their reorganization and rehabilitation. Based on these factors, the Court finds that 36 months is a reasonable time within which to cure the arrearage on debtors' mortgage with Crossland.

### ORDER

Accordingly, it is

ORDERED AND ADJUDGED that Crossland Mortgage Corporation's objection to confirmation is hereby overruled.

DONE AND ORDERED.