**In re Bonnie and Mark LESSMAN, Debtors.**

**Bankruptcy No. 92–42989 (JLG).**

United States Bankruptcy Court, S.D. New York.

Sept. 3, 1993.

---

Ronald Fanta, Arthur Laske, New York City, for debtors.

Hinman, Howard & Katell, Clayton Axtel, Binghamton, NY, for First Bank.

Law Offices of Jeffrey L. Sapir, Jody L. Kava, White Plains, NY, for Standing Chapter 13 Trustee.

<hr>

1. By order of this Court dated March 24, 1993, debtors were authorized pursuant to 11 U.S.C.

## MEMORANDUM OF DECISION DENYING CONFIRMATION OF CHAPTER 13 PLAN

JAMES L. GARRITY, Jr., Bankruptcy Judge.

The matter before the Court is the confirmation of the Second Amended Chapter 13 Plan ("plan") of Bonnie and Mark Lessman, the debtors herein. Among the assets listed in debtors' joint Chapter 13 petition, is a vacation home located in Tunckhannock, Pennsylvania (the "Premises"). The First Bank of Pittson, Pennsylvania (the "Bank") is debtors' largest creditor holding a claim in the approximate sum of $79,400.00. That claim is secured by a properly perfected first mortgage on the Premises. Debtors were in default under the mortgage prepetition due to their failure to make mortgage payments totalling approximately $8,700 ("Prepetition Arrearages"). By reason of that default, the Bank accelerated the amount due under the mortgage and commenced an action in Pennsylvania state court to foreclose the mortgage. Debtors seek to reinstate the mortgage under their plan pursuant to § 1322(b)(5) of the Bankruptcy Code ("Code"). To that end, they propose to pay off the Prepetition Arrearages over the sixty month life of the plan [1] and to make current mortgage payments at the contractual rate set forth in the mortgage outside the plan. Included in those current mortgage payments are arrearages that have accrued postpetition and will continue to accrue through the confirmation of the plan which total at least $7,300 ("Postpetition Arrearages").

The Bank objects to confirmation on five grounds. The first three are predicated on alleged violations of 11 U.S.C. § 1322(b)(5). First, the Bank contends that the Postpetition Arrearages must be paid in full as a condition to confirmation. Second, it argues that even if those arrearages can be cured in post-confirmation installment pay-

§ 1322(c) to extend their plan to sixty months.

ments, § 1322(b)(5) mandates that those payments be made under and not outside the plan. Finally, it argues that debtors' offer to cure the Prepetition Arrearages over the life of the plan violates the directive that those arrearages be paid within a reasonable time. The Bank's remaining objections to confirmation are that the plan violates § 1325(a)(3) of the Code because it was not proposed in good faith, and that it does not satisfy the feasibility standard of 11 U.S.C. § 1325(a)(6).

As more fully set forth herein, we find that the plan violates 11 U.S.C. § 1322(b)(5).[2] As such, the plan cannot be confirmed because debtors have not met their burden of showing that the plan satisfies § 1325(a)(1) of the Code. We need not and do not consider whether the plan runs afoul of §§ 1325(a)(3) or (a)(6).

 Section 1325 of the Code governs the confirmation of a Chapter 13 plan. Debtors bear the burden of proving that the requirements of that section have been satisfied. *In re Packham*, 126 B.R. 603, 607 (Bankr.D. Utah 1991). Pursuant to § 1325(a)(1), the Plan must comply "with the provisions of this chapter and with the other applicable provisions of this title." 11 U.S.C. § 1325(a)(1). In that regard, § 1322(a) lists provisions which must be made part of a chapter 13 debtor's plan, while § 1322(b) contains provisions which a debtor may utilize and in appropriate cir-

cumstances. *See* 11 U.S.C. § 1322(a) and (b). Of significance in this case is § 1322(b)(5). Under that section, a debtor may reinstate a defaulted payment contract which matures after the last date for payments under the plan, provided that he maintains performance under that contract during the pendency of the case and cures the default within a reasonable time by making payments under the plan. *See Di Pierro v. Taddeo (In re Taddeo)*, 685 F.2d 24, 26–28 (2d Cir.1982); *Landmark Fin. Servs. v. Hall*, 918 F.2d 1150, 1154 (4th Cir.1990).[3]

 If reinstated, the Bank's mortgage will mature in the year 2014. Accordingly, the Bank argues that to comply with the directive in § 1322(b)(5) that the plan provide for the "maintenance of payments while the case is pending", debtors must cure the Postpetition Arrearages as a condition to confirming the plan. We disagree. Courts have not read such a requirement into the statute and instead have found that the section permits the curing of postpetition, preconfirmation defaults through payments under a plan. *See, e.g., In re Thomas*, 121 B.R. 94, 104 (Bankr. N.D.Ala.1990); *In re Gadlen*, 110 B.R. 341, 344–45 (Bankr.W.D.Tenn.1990); *In re Ford*, 84 B.R. 40, 44 (Bankr.E.D.Pa.1988); *In re Canipe*, 20 B.R. 81, 83 (Bankr. W.D.N.C.1982); *see also In re Barrett*, 149 B.R. 494, 499 (Bankr.N.D. Ohio 1993) (find-

---

**2.** This memorandum of decision constitutes our findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52, as made applicable to this contested matter by Bankruptcy Rules 7052 and 9014. Our subject matter jurisdiction of this motion is predicated on 28 U.S.C. §§ 1334(b) and 157(a), and the "Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York", dated July 10, 1984 (Ward, Acting C.J.). This contested matter is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(L).

**3.** Because the Bank's claim is not secured by a lien on real property that is the debtors' principal residence, debtors could seek to modify the Bank's claim pursuant to § 1322(b)(2) of the Code. *See* 11 U.S.C. § 1322(b)(2); *In re Taddeo*, 685 F.2d at 27. If debtors so elected, they would be required to satisfy the cramdown provisions of § 1325(a)(5) of the Code and satisfy the claim, as modified, in full within the sixty

month life of the plan. *See Bellamy v. Federal Home Loan Mortgage Company (In re Bellamy)*, 962 F.2d 176, 185 (2d Cir.1992). *See also In re Hayes*, 111 B.R. 924, 926 (Bankr.D.Or.1990) ("under § 1322(b)(5) and § 1325(a)(5) the debtor has two alternatives for treatment of a claim secured other than by a security interest in the principal residence. He or she may either leave the contract intact (maintain and cure) or alter the terms and pay the present value of the secured claim (cramdown)"). Although debtors argue that they have not elected to satisfy the Bank's claim pursuant to § 1322(b)(5), the terms of the plan plainly establish otherwise. Debtors seek to reinstate the mortgage by curing the arrearages under the plan while making current payments outside the plan and beyond the life of the plan. That can only be accomplished by application of § 1322(b)(5). Having elected that treatment, debtors must satisfy all elements of § 1322(b)(5).

ing that unpaid postpetition mortgage payments do not constitute an administrative expense claim). However, it is equally clear that the Postpetition Arrearages must be cured by payments under the plan. *See, e.g., In re Gadlen,* 110 B.R. at 345, *In re Ford,* 84 B.R. at 44. For that reason, the plan does not pass muster under § 1322(b)(5) and, by application of Code § 1325(a)(1), cannot be confirmed. However, because that defect can be easily remedied by amending the plan to provide that the Postpetition Arrearages will be cured by payments under the plan,[4] in the interests of judicial economy, we will address the Bank's argument that debtors cannot cure the Prepetition Arrearages over the life of the plan.

■ What constitutes a reasonable cure period for purposes of § 1322(b)(5) is determined by the facts and equities of each case. *See, e.g., In re Taddeo,* 685 F.2d at 28; *Central Fed. Sav. & Loan Assoc. v. King (In re King),* 23 B.R. 779, 781 (Bankr. 9th Cir. BAP 1982); *In re Chavez,* 117 B.R. 730, 732 (Bankr.S.D.Fla.1990); *Fleet Fin., Inc. v. Randolph (In re Randolph),* 102 B.R. 902, 903 (Bankr.S.D.Ga.1989). This provision has been construed to mean that the cure may be effected over the life of the plan. *See, e.g., In re Seem,* 92 B.R. 134, 135 (Bankr.E.D.Pa.1988); *see also In re Masterson,* 147 B.R. 295, 296 (Bankr. D.N.H.1992) (finding that the determination of what is reasonable time under § 1322(b)(5) is informed by the question of what cause a debtor has shown under § 1322(c) to extend the plan period from three years to five years); *In re Randolph,* 102 B.R. at 903–4 ("[n]othing in the legislative history of § 1322(b)(5) suggests that the cure of the default is restricted to a time less than the period of the plan"). It has also been read more restrictively to require that the cure payments be made over a period which is shorter than the life of the plan. *See In re Brooks,* 51 B.R. 741, 743 (Bankr.S.D.Fla.1985) ("Congress intended a more stringent standard [under § 1322(b)(5) ] than the authorized life of a chapter 13 plan"); *In re Acevedo,* 9 B.R. 852, 854 (Bankr.E.D.N.Y.1981), *aff'd,* 26 B.R. 994 (E.D.N.Y.1982) (finding that § 1322(c) should not be construed as "implicitly permitting a debtor to effect cure under § 1322(b)(5) over a three year period"). We will eschew a bright line test and consider the reasonableness of the payment proposal in light of the following factors:

(1) the nature and repayment period of the original obligation;

(2) the nature of the property held as security;

(3) debtors' repayment record;

(4) the amount and reason for the arrearage;

(5) the availability of debtors' discretionary income to cure default;

(6) the ability of debtors to meet the obligations of their plan and to continue current payments on their installment obligations;

(7) whether debtors are putting forth their best effort to cure default; and

(8) the necessity of the asset to an effective rehabilitation of debtors.

*See, e.g., In re Chavez,* 117 B.R. at 732; *In re La Crue,* 33 B.R. 569, 571 (Bankr. D.Colo.1983); *In re Lynch,* 12 B.R. 533, 536 (Bankr.W.D.Wis.1981).

■ Debtors' repayment record is dismal: they were ten months in arrears on the mortgage when they commenced this case and they have made no postpetition payments to the Bank. Their amended schedule of expenditures reveals that they are devoting one hundred percent of their estimated discretionary income to the plan leaving no income cushion to cure any defaults under the plan. Significantly, the Premises is debtors' vacation home which they have not shown to be necessary to their reorganization and rehabilitation. Although the Bank's expectations under its mortgage (which does not mature until 2014) will not be materially altered if debtors are permitted to cure the Prepetition Postpetition Arrearages.

---

4. Indeed, debtors' First Amended Chapter 13 Plan provided for just that treatment of the Postpetition Arrearages.

Arrearages over the life of the plan, and debtors submitted some evidence to show that Mr. Lessman's loss of his job was a contributing factor to their default under the mortgage, on balance, our review of the facts in this case leads us to conclude that debtors' proposal to cure the arrearages over the life of the plan is unreasonable. For that additional reason the plan violates § 1322(b)(5).

Based on the foregoing, we find that the plan cannot be confirmed. The Bank is directed to settle an order consistent with the foregoing.