In re Linda C. COMANS.

Bankruptcy No. 9204497JC.

United States Bankruptcy Court,
S.D. Mississippi,
Jackson Division.

Feb. 18, 1994.

John A. Allen, Jackson, MS, for debtor.

Terre M. Vardaman, Jackson, MS, for Trustee Harold J. Barkley, Jr.

Jeffrey D. Rawlings, Jackson, MS, for Green Tree Financial Corp.—Miss.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

EDWARD ELLINGTON, Chief Judge.

This matter came before the Court on the *Objection to Confirmation* filed by Green Tree Financial Corp.–Mississippi and the *Trustee's Response to the Objection to Con-firmation* filed by Harold J. Barkley, Jr. Having reviewed the *Stipulation of Facts* and the briefs submitted by the parties, the Court finds that the Debtor's proposal to combine the post-petition, pre-confirmation mobile home payment owed to Green Tree for the month of December 1992 with the pre-petition monthly payments which are in default and to cure the total default over the life of the plan does not violate 11 U.S.C. § 1322(b)(5). Green Tree Financial Corp.–Mississippi's objection to confirmation is hereby overruled, and the Debtor's plan can be confirmed as filed.

### FINDINGS OF FACT

The parties filed a *Stipulation of Facts* and a *Supplemental Stipulation* with the Court in which they stipulated to the items recited below:

In 1985 the Debtor entered into a *Manufactured Home Retail Installment and Security Agreement* (Contract) with Green Tree Financial Corp.–Mississippi (Green Tree) for the purpose of purchasing a 1985 Vintage Homes, Inc. Phenix Manufactured Home (mobile home). The original amount owed by the Debtor to Green Tree was $34,428.10, less a down payment of $1,491.70, for a net total of $32,936.40. This figure of $32,936.40 is comprised of principal in the amount of $13,400.00 and interest in the amount of $19,-536.40. The Debtor pledged the mobile home, including all furniture, fixtures, appliances and appurtenances therein, to Green Tree as collateral for the indebtedness due. Pursuant to the terms of the Contract, the Debtor is obligated to pay Green Tree 180 monthly payments of $182.98 commencing on October 10, 1985, and to maintain insurance on the mobile home.

The Debtor filed her petition for relief under Chapter 13 of the Bankruptcy Code on December 2, 1992. The Debtor's Chapter 13 Plan (Plan) is proposed for 36 months. Since the last payment due to Green Tree under the terms of its Contract with the Debtor is due after the date on which the final payment under the Plan is due, the Debtor's proposed Plan treats Green Tree's claim pursuant to the provisions of 11 U.S.C.

§ 1322(b)(5).[1]  Basically, § 1322(b)(5) requires that the debtor maintain the payments to the secured creditor and that the debtor cure any default within a reasonable time.

At the time she filed her petition, the Debtor's payoff figure on her debt to Green Tree was $11,452.97 plus late charges, interest and attorney's fees accruing thereafter, and the Debtor was in default on her payments to Green Tree through November 1992, in the amount of $617.74.  The Plan proposed by the Debtor provides for the regular monthly payments due to Green Tree to commence in January 1993, thereby creating a one month post-petition arrearage for the month of December.  This will increase the total arrearage owed to Green Tree under the Plan to $934.

At the time the first stipulation was entered into by the parties, the parties stipulated that the Debtor was current in her plan payments to the Chapter 13 Trustee, Harold J. Barkley, Jr. (Trustee).

Pursuant to the *Supplemental Stipulation,* the Court takes judicial notice of the official court file.

The parties entered into an agreed order on May 17, 1993, in which they agreed that in lieu of making an oral record they would submit this matter before the Court on briefs and on stipulation.  Thereafter, the Debtor's Plan was confirmed on November 1, 1993, subject to the Court's ruling on Green Tree's objection to the arrearage figure proposed in the Debtor's Plan.

## CONCLUSIONS OF LAW

### I.

This Court has jurisdiction of the subject matter and of the parties to this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157.  This is a core proceeding as defined in 28 U.S.C. § 157(b)(2).

### II.

The issue before the Court is whether the Debtor's Plan may cure a post-petition, pre-confirmation default by combining the default with the pre-petition default pursuant to § 1322(b)(5).

The applicable portions of § 1322 provide as follows:

**11 U.S.C. § 1322.  Contents of plan**

(b) Subject to subsections (a) and (c) of this section, the plan may—

. . . .

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, . . . or leave unaffected the rights of holders of any class of claims;

(3) provide for the curing or waiving of any defaults;

. . . .

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

Green Tree argues that § 1322(b)(5) provides that the Debtor must maintain her payments to Green Tree once she files her petition.  Since the payment due on December 10, 1992, is post-petition, Green Tree asserts that § 1322(b)(5) prohibits post-petition payments from being combined with the pre-petition arrearage figure.  Green Tree argues that the Debtor has not shown any valid reason why she could not have made the December payment directly to Green Tree.  Green Tree further states that the Trustee's argument of administrative convenience does not overcome the requirements of § 1322.

The Trustee argues that the Debtor commenced her plan payments within 30 days of the filing of the petition as required by the Code.  11 U.S.C. § 1326(a)(1).  Therefore, if the Debtor was required to pay the December payment to Green Tree, then the Trustee

1.  Hereinafter, all code sections refer to the Bankruptcy Code found at Title 11 of the United States Code unless specifically noted otherwise.

asserts that this would force the Debtor to remit plan payments prior to the statutory time limits. In addition, the Trustee argues that the plain language of § 1322(b)(5) is not limited to the curing of pre-petition defaults, but rather permits the Debtor to cure any default within a reasonable time.

The Court finds that in order for the Debtor to have her Plan confirmed as proposed, she must meet the requirements enumerated in § 1325. "Pursuant to § 1325(a)(1), the Plan must comply 'with the provisions of this chapter and with the other applicable provisions of this title.' 11 U.S.C. § 1325(a)(1). In that regard, § 1322(a) lists provisions which must be made part of a chapter 13 debtor's plan, while § 1322(b) contains provisions which a debtor may utilize. . . ." *In re Lessman,* 159 B.R. 135, 137 (Bankr.S.D.N.Y. 1993).

Since Green Tree is not secured by a lien on real property that is the Debtor's principal residence, the Debtor has two options available to her under § 1322. She can either pay the present value of the secured claim over the life of her Plan (i.e., cramdown Green Tree's claim to the value of the collateral) pursuant to § 1322(b)(2), or she can maintain and cure the contract pursuant to § 1322(b)(5) (i.e., pay Green Tree according to the contract rather than paying only the value of the collateral). The Debtor has opted to maintain and cure Green Tree's contract pursuant to § 1322(b)(5).

Chief Bankruptcy Judge George S. Wright of the Northern District of Alabama thoroughly examined the legislative history of and the case authority on § 1322(b) in his opinion *Thomas v. Central Bank of the South (In re Thomas),* 121 B.R. 94 (Bankr.N.D.Ala. 1990). In the *Thomas* case, the debtor sought to modify her confirmed plan to provide for the payment of a post-petition mortgage default. Judge Wright allowed the modification finding that:

> Neither House nor Senate reports make any differentiation between pre- and post-petition default in their comments on Section 1322(b)(3) and (5) (the section for longterm debt.) It seems likely that if Congress had intended a debtor's ability to cure default to be limited to pre-petition

default, the legislative reports would have said so. Instead, the plain language of the statute unambiguously says "any default." *Thomas,* 121 B.R. at 103. (*See* H.R.Rep, No. 595, 95th Cong., 1st Sess. 429 (1977), U.S.Code Cong. & Admin.News 1978, p. 6384; S.Rep. No. 989, 95th Cong., 2d Sess. 141 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5927.).

Judge Wright went on to review the reported case law dealing with § 1322(b)(5). He acknowledged that there is a split of authority on the issue of allowing debtors to cure post-petition defaults, but he found the majority view to be that § 1322(b)(3) and (5) enable the debtor to cure a post-petition default. *Thomas,* 121 B.R. at 104. *See,* 5 *Collier on Bankruptcy* ¶ 1322.09(1) and (2), beginning at 1322–21 and 1322–22.1 (Lawrence P. King ed., 15th ed. 1993); *Bowest Corporation v. Stafford (In re Stafford),* 123 B.R. 415 (N.D.Ala.1991); *In re Gadlen,* 110 B.R. 341 (Bankr.W.D.Tenn.1990); *In re Davis,* 110 B.R. 834 (Bankr.W.D.Tenn.1989); *In re Ford,* 84 B.R. 40 (Bankr.E.D.Pa.1988); *In re Nickleberry,* 76 B.R. 413 (Bankr. E.D.Pa.1987); *In re McCollum,* 76 B.R. 797 (Bankr.Or.1987); *In re Minick,* 63 B.R. 440 (Bankr.D.D.C.1986); *In re Canipe,* 20 B.R. 81 (Bankr.W.D.N.C.1982); *In re Simpkins,* 16 B.R. 956 (Bankr.E.D.Tenn.1982).

*In re Gadlen,* 110 B.R. 341 (Bankr. W.D.Tenn.1990), involved a factual situation which is different from the case at bar, but in its opinion, the court addressed the issue of a debtor's ability to cure defaults under § 1322(b)(5). In *Gadlen,* the debtor was attempting to modify his confirmed plan to include payment for post-petition, post-confirmation mortgage arrearages. The creditor argued that § 1322(b)(5) only allowed the curing of pre-petition arrearages. The court disagreed with this contention and allowed the modification. Even though the debtor was attempting to cure post-petition, post-confirmation arrearages on his home mortgage, the court stated that "(s)ection 1322(b)(5) does permit, as an exception to § 1322(b)(2), that defaults may be cured 'within a reasonable time.'" *Gadlen,* 110 B.R. at 344. In the case at bar, the Debtor is not attempting to cure an egregious post-

confirmation default as in *Gadlen.* The Debtor is simply attempting to combine one post-petition, pre-confirmation payment with the pre-petition arrearage figure.

In the recent opinion of *In re Lessman,* 159 B.R. 135 (Bankr.S.D.N.Y.1993), the debtor had post-petition, but pre-confirmation arrearages similar to the case at bar. Similar to Green Tree's argument, the creditor in *Lessman* argued that in order to comply with the provisions of § 1322(b)(5), the debtor must cure the post-petition arrearages as a condition to confirmation of the plan. The court denied confirmation on other grounds, but it stated that it disagreed with the creditor's interpretation of § 1322(b)(5). After careful consideration, the court stated that "the statute permits the curing of postpetition, preconfirmation defaults through payments under a plan." *Lessman,* 159 B.R. at 137 (citations omitted).

In the Northern District of Mississippi, Bankruptcy Judge David W. Houston, III ruled in a Bench Opinion on January 20, 1993, against Green Tree on this same issue in the case of *In re Clarine Watts,* Case No 92–43327. In *Watts* the debtor filed her petition and plan in October 1992. Her plan proposed to combine the November 1992 and December 1992 post-petition payments owed to Green Tree with the pre-petition arrearage. In his Bench Opinion, Judge Houston overruled Green Tree's objection to confirmation and allowed the debtor's plan to combine the November and December payments with the pre-petition arrearage.

In the case at bar, Green Tree does not cite any cases in its brief which are directly on point. Green Tree cites the Fifth Circuit Court of Appeals' opinion of *Grubbs v. Houston First American Savings Association,* 730 F.2d 236, 243 (5th Cir.1984), for the proposition that the Debtor must "reinstate and maintain the 'original agreed payment schedule.'" *Brief,* pp. 1–2. However, the portion of the quoted phrase from *Grubbs* which Green Tree omitted in its brief states that "(b)(5) permit(s) relief by way of *curing defaults and* reinstating the original agreed payment schedule." *Grubbs,* 730 at 243 (emphasis added). This is exactly what the Debtor proposes to do. She is attempting to

cure her post-petition default to Green Tree and to maintain her payments to Green Tree. The *Grubbs* case dealt with the interplay between § 1322(b)(2) (which prohibits modification of a home mortgage) and §§ 1322(b)(3) and (b)(5) (which permit the curing of any default). Contrary to Green Tree's argument, the *Grubbs* opinion does not specifically rule on whether § 1322(b)(5) can be used by a debtor to cure post-petition defaults.

Green Tree also cites the United States Supreme Court's decision of *Rake v. Wade,* — U.S. ——, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993), which addresses the issue of interest on arrearage. This Court acknowledges that Green Tree's brief is correct when it states that the *Rake* opinion recites that pursuant to § 1322(b)(5) the debtors in *Rake* "maintained" the principal and interest payments during the pendency of their case. *Rake,* —— U.S. at ——, 113 S.Ct. at 2192–93. However in addition to maintaining payments, the Supreme Court also comments that "(s)ection 1322(b)(5) ... states that a Chapter 13 plan may *'provide for the curing of any default and* the maintenance of payments' on certain claims.... (Section) 1322(b)(5) authorizes a Chapter 13 plan to provide for payments on arrearages to effectuate a cure after the effective date of the plan...." *Rake,* —— U.S. at ——, 113 S.Ct. at 2192 (emphasis added). The Supreme Court does not state in *Rake* that § 1322(b)(5) prohibits the curing of post-petition arrearages.

### CONCLUSION

The policy goal of Congress in Chapter 13 bankruptcies is to provide debtors with a chance for a fresh start. As discussed in the *Thomas* opinion, the legislative history of § 1322(b)(5) clearly shows that Congress did not intend for the cure of a default to be limited to pre-petition defaults. The unambiguous language of § 1322(b)(5) says a debtor may cure "any default." When the statutory language is clear and unambiguous, this Court must "'enforce it according to its terms.'" *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) (quoting *Cami-*

*netti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917)).

Consequentially, this Court finds that combining the December 1992 payment owed to Green Tree with the pre-petition arrearage figure is a modest and justifiable post-petition delinquency which can be cured under § 1322(b)(5). Green Tree's objection to confirmation is overruled.

A separate judgment consistent with this opinion will be entered in accordance with Federal Rules of Bankruptcy Procedure 7054 and 9021.

**SO ORDERED.**

### FINAL JUDGMENT

Consistent with the opinion dated contemporaneously herewith, it is hereby ordered and adjudged that the *Objection to Confirmation* filed by Green Tree Financial Corp.–Mississippi is hereby overruled and that the mobile home payment owed to Green Tree for the month of December 1992 can be combined with the pre-petition default owed to Green Tree and paid according to the proposed plan.

This is a final judgment for purposes of Federal Rules of Bankruptcy Procedure 7054 and 9021.

**SO ORDERED.**