**In re Clay E. HAGER, Linda M. Hager, Debtors.**

No. 10–60968.

United States Bankruptcy Court, D. Minnesota.

April 13, 2011.

Logan M. Moore, Velde Moore Ltd., Alexandria, MN, for Debtors.

## ORDER DENYING CONFIRMATION AND DISMISSING CASE

DENNIS D. O'BRIEN, Bankruptcy Judge.

Confirmation of the debtors Clay and Linda Hagers' proposed Fifth Modified Plan with objections thereto and motions to dismiss came before the Court on February 22, 2011. Logan Moore appeared on behalf of the debtors; Michael L. Gust appeared on behalf of the Chapter 13 Trustee, Kyle Carlson; and David Johnson appeared on behalf of First State Bank of Alexandria. The Trustee objects to the plan. First State Bank of Alexandria joins in the objection and seeks dismissal of the case. The Court, having heard arguments and reviewed filed briefs and being fully advised in the matter, now makes this **ORDER** pursuant to the Federal and Local Rules of Bankruptcy Procedure.

### I

This case was filed on August 13, 2010. This was the second confirmation hearing on a proposed plan. After the first hearing, the debtors' Second Amended Plan was denied confirmation on November 18, 2010, because the debtors proposed to surrender their homestead and a separate hunting land to three mortgagees and to

disallow undersecured mortgagees' unsecured deficiency claims. The debtors claimed that the Second Amended Plan was a 100% plan. The Fifth Modified Plan proposes that the debtors retain their homestead and that they sell the hunting land, applying the proceeds to the priority mortgagees.[1] They propose to continue to make payments on the hunting land pending sale. The debtors claim that the new plan is a 44% payment plan. They would pay $1100 monthly to the Trustee and contribute expected bonuses received by debtor Linda Hager in connection with her employment over a 65 month term, totaling $112,000 in plan payments.

The Trustee objects to the Plan claiming that the Plan does not provide for the payment of all the debtors' disposable income and that the Plan was proposed in bad faith. The First State Bank of Alexandria joins in the objections and seeks dismissal of the case.[2] The Court finds that the debtors have not proposed to pay all of their disposable income under the Plan and denies confirmation. The case is dismissed because it has been pending for eight months and the debtors are unable or unwilling to propose a confirmable plan.

## II

The debtors' scheduled claims include:

Secured

| | $ | |
|---|---|---|
| Bank of America | 293,675 | first mtg hmstd |
| State Bank Park Rapids | 350,000 | second mtg hmstd |
| First State Bank Alex. | 242,000 | third mtg hmstd |
| State Bank Park Rapids | 130,000 | first mtg hunting ld |
| First State Bank Alex. | 242,000 | second mtg hunting ld |
| Bank of the West | 17,000 | 2008 Pontiac |
| First State Bank Alex. | 15,800 | 2007 Chev Silverado |
| First State Bank Alex. | 18,240 | 2008 Toyota Prius |
| State Bank Park Rapids | 262,000 | Stock & other real est. |

Unsecured

| | $ | |
|---|---|---|
| US Dept Edu | 7,500 | Student loan |
| Slumberland | 5,861 | Consumer purchases |

The debtors initially proposed a plan that provided surrender of their homestead and hunting land to the three lien holders in full satisfaction of their claims, including any deficiency claims. The debtors claimed that the proposal was a 100% plan. Confirmation was denied because the proposal to deny unsecured deficiency claims was without legal basis. The homestead is valued at $507,000, and the hunting land is valued at $120,000. The first and second mortgages on the homestead total at least $643,675. First State Bank of Alexandria is wholly unsecured in the homestead. The Bank is also totally unsecured in the hunting land with its second mortgage, behind Park State Bank's first mortgage of $130,000. First State Bank of Alexandria's mortgage debt is, therefore, completely unsecured in the case.[3]

The debtors have not shown that their present proposal would contribute all of their disposable income during the term of the Plan.[4] Disposable income is determined under 11 U.S.C. § 1325(b)(3) because the debtors' income exceeds the median income for the county in which they

1. The Plan does not require that the hunting land be sold within a specified period.

2. The Court stated at the hearing that no finding would be made on the allegation of bad faith without an evidentiary hearing. All parties agreed that it would not be necessary for the Court to reach the issue, and that no evidentiary hearing was necessary. An extensive evidentiary hearing was held in November, 2010, on the **Second Amended Plan.**

3. The Bank is fully secured on the vehicle loans.

4. The debtors have the burden of proof that the Plan complies with 11 U.S.C. § 1325 and related Code provisions. *In re Baird*, 234 B.R. 546 (Bankr.M.D.Fla.1999); *In re Davis*, 239 B.R. 573 (10th Cir. BAP 1999); *In re Letsche*, 234 B.R. 208 (Bankr.D.Mass.1999); *In re Lessman*, 159 B.R. 135 (Bankr.S.D.N.Y. 1993).

reside.[5] Pending the sale of the hunting land, the debtors would continue to pay Park State Bank on both the second mortgage on their homestead and the first mortgage on the hunting land. The debtors have not explained why they need to continue to pay Park State Bank on the first mortgage on the hunting land and why they cannot restructure the second mortgage on the homestead.[6]

Additionally, Linda Hager continues to contribute voluntary 401(k) contributions of $663.00 monthly. These voluntary contributions are from disposable income that must be paid into a plan.

Bankruptcy Allowable Living Expenses—National Standards (See 11 U.S.C. § 707(b)(2)(A)(ii)(I)), allow monthly food, services and miscellaneous expenses in the amount of $1046 for a household of four. The debtors' amended schedules, filed January 21, 2011, list expenses in the total amount of $1645.[7] An additional $600 of disposable income should have been provided under the plan.

The debtors retain three vehicles and propose to pay the lien creditors outside the Plan. They are entitled to ownership and operation expenses for two vehicles. The debtors made no selection, wholly failing to complete Schedule B22C, sections 28 and 29. The National Standards allow monthly ownership payments of $496 per vehicle. In their amended Schedules, filed January 21, 2011, the debtors lumped payments on all three vehicles at a total of $1200. The Local Standards allow $210 operating costs for each of two vehicles or a total of $420. The debtors list $500 transportation costs and $400 travel expenses.[8]

It appears that the debtors' Fifth Modified Plan fails to include substantial disposable income of the debtors over the term of the Plan. The evaluation is somewhat difficult due their failure to properly complete Schedule B22C, filed with the petition, or to subsequently amend it. This case has now been pending for eight months. The debtors have submitted five plan iterations in response to continuing objections. Apparently, they are either unwilling or unable to propose a confirmable plan. The case should be dismissed, accordingly.

### III

Based on the forgoing, it is hereby **ORDERED**:

Confirmation of the debtors' Fifth Modified Plan is DENIED, and the case is DISMISSED.

---

5. The median income for Douglas County, MN is $86,329.00. The debtor's income, without including $18,000 annual bonuses paid to Linda Hager, is $205,812.

6. 11 U.S.C. § 1322(b)(2) does not prevent a restructuring of the Bank's mortgage on the debtors' homestead because its debt is not secured solely by the homestead. The second mortgage on the homestead and the first on the hunting land cover the same debt. The debtors continue to pay Park State Bank $2300 monthly on its mortgages.

7. The debtors' Schedule B22C, filed with the petition, lists these category 24A expenses at $526. No amendment to Schedule B22C has been filed in the case.

8. The debtors do not explain what these travel expenses are or why they are proper deductions from disposable income on Schedule B22C. They are included here as vehicle operation expenses for lack of more specific information. Travel expense does not appear on the debtors' Schedule B22C.